No. 41,438

N. C. READ, d/b/a YELLOW AND CITY CAB COMPANY, *Appellee*, v. R. L. WARKENTIN, State Labor Commissioner, *Appellant*.

(341 P. 2d 980)

Opinion filed July 10, 1959.

*Chas. H. Cory*, of Topeka, argued the cause, and *Starr Calvert, Jr.*, of Topeka, was with him on the briefs for the appellant.

*Jack L. Goodrich*, of Parsons, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This appeal, authorized by G. S. 1949, 44-710b(*c*), is from a judgment by the district court which, after the judicial review permitted by G. S. 1949, 44-710b (*b*), reversed a decision of the State Labor Commissioner holding N. C. Read d/b/a Yellow and City Cab Company to be a liable employer under the Kansas Employment Security Law (G. S. 1949, 44-701, *et seq.*, as amended).

The facts and proceedings giving rise to the appeal are not only informative but important to its decision and should be detailed.

Following classification of Read as a liable employer under the employment security law administrative proceedings were had before the Commissioner. After a hearing, pursuant to G. S. 1949, 44-710b(*a*), where evidence was adduced, the Commissioner made findings of fact. Such findings read:

"N. C. Read does business as a sole proprietor engaged in the taxicab business in the City of Parsons, Kansas, doing business as Yellow and City Cab. Read owns six taxicabs, which are painted yellow on top and have painted on the doors in yellow 'Yellow Cab, Phone 266.' Said taxicabs are equipped with two-way radios, and Read maintains a taxicab office in which he has a waiting room for passengers in which there is a bench and some chairs for the customers' convenience in waiting for a taxi. Also, at said office is a room for the dispatcher and another office that drivers use for a standby room. Read admits to the employment of two regular and one relief dispatchers. In addition to these employees, Read has written contracts with ten individuals who drive the taxicabs owned by Read. Each of these contracts contain the same provisions and are entitled 'Rental Agreement.'

"Without detailing all of the provisions of said agreement, these contracts provide for the furnishing of a taxicab by Read to the individual driver, and in addition Read agrees to furnish dispatching service and maintain and pay all expenses necessarily incurred in connection with the maintenance and operation of said taxicab. Each driver agrees to pay to Read the equivalent of

60% of all receipts accruing from the operation of said taxicab, and each driver retains the balance of 40% of receipts received. These contracts are terminable at the will of either party and, under the provisions of said agreement, no taxicab driver is liable to Read for the usual and ordinary wear and tear of said taxicab resulting from its operation and no taxicab driver is liable to Read for any damage which is caused by collision or accident.

"Read requires the drivers to be shaved, properly dressed and not use intoxicating liquor. None of the individuals with whom Read has contracts are listed in the Parsons telephone directory as being taxicab drivers. Drivers are required to keep their cabs subject to call or pay a charge of $3.50 per hour when they go 'on time.' The drivers are also instructed to get their gas and repairs at certain service stations, all of which is charged by said drivers to Read's credit account with said stations. Drivers for all practical purposes get their passengers through the dispatcher, although occasionally they might have a pickup. Read extends credit to Southwestern Bell Telephone, Western Union and a drug store, for which deliveries are made. These companies give individual taxicab drivers a charge ticket which he turns into the office, on checking the cab in, for cash.

"Drivers are required to maintain waybills, and dispatchers maintain a record of calls to drivers and these records are cross checked to determine that the driver accounts for each fare. No driver has any right to acquire any interest in taxicabs owned by Read. The drivers operate in what is generally considered two shifts. The morning shift comes on at 5:00 A. M. These drivers are required to release their cabs to the drivers for the later afternoon and night shift at 4:00 P. M. Each driver accounts to Read for Read's 60% of the day's receipts on a daily basis."

After making the foregoing findings the Commissioner made conclusions of law which, so far as here pertinent, are that the taxicab drivers under their contract with Read were employees, rather than independent contractors; that the portion of the daily receipts, *i. e.,* forty per cent of gross revenues from fees collected and retained by such drivers from the operation of Read's taxicabs under the contract, constituted "commissions" and therefore wages within the definition of the term "wages" used in the law (G. S. 1957 Supp., 44-703[o]); that said drivers were in employment as that term is defined in the law (G. S. 1957 Supp., 44-703[i]); and that there being a sufficient number of individuals in employment for a sufficient time Read was a liable employer within the definition of the term "employer" as defined in such law (Now G. S. 1957 Supp., 44-703[h]).

Thereupon, based on the foregoing findings and conclusions, the Commissioner rendered his decision wherein he held Read was a liable employer under the employment security law and liable for contributions at his assigned rate on the percentage of gross rev-

enue, derived from the operation of taxicabs owned by him, which was retained by the taxicab drivers.

Soon after rendition of the Commissioner's decision, and within the time prescribed by G. S. 1949, 44-710(b), Read sought judicial review of such decision in the district court by filing a petition wherein he alleged the decision was contrary to the evidence in that he was not an employer within the meaning of the employment security law; that by contract all drivers of his taxicabs were independent contractors; and that the decision was contrary to such employment security law in that there was no legal liability for contributions under its terms for money earned by an independent contractor. Based upon these allegations, and others not here important, he prayed that such decision be reversed and set aside and that the court make a determination that he was not an employer within the provisions of such law.

By way of answer, to which he attached a full and complete copy of the involved decision, the Commissioner alleged the findings of fact contained in his decision were supported by evidence and that the jurisdiction of the district court was confined solely to questions of law, all as prescribed by G. S. 1949, 44-710b(b); denied such decision was contrary to the evidence and that the taxicab drivers were independent contractors under their contract with Read; and prayed that his decision be affirmed.

With issues joined as related the full and complete record before the Commissioner at the time of his hearing was certified to the district court and filed of record with the clerk of such court. This, it is to be noted, included, among other things, a transcript of the evidence taken by the Commissioner at the hearing; samples of the daily waybills Read required the drivers to prepare and file, showing the beginning and ending of trips, number of passengers carried, and the amount of fares collected; and a copy of the contract entered into between Read and each driver, titled "RENTAL AGREEMENT," which, for all practical purposes it may be said, contained provisions similar in substance to those set forth in the second paragraph of the Commissioner's findings, as heretofore quoted.

Thereafter the district court heard the review proceeding in a summary manner without additional evidence, all as contemplated by the section of the statute last above mentioned, and, after oral argument and submission of briefs by respective counsel, rendered its decision holding, on the basis of record before the

Commissioner as certified, that: (1) The findings of fact made by the Commissioner were considered as conclusive upon the court (G. S. 1949, 44-710b[b]); (2) the Commissioner erred in finding the relationship between Read and his taxicab drivers to be that of employer and employee, or master and servant; (3) the legal relationship between Read and his taxicab drivers was one of contract and bailment; (4) where a question existed as to the nature of the relationship, such question must be resolved in favor of the taxpayer; (5) Read was not liable as employer under the employment security law. Thereupon the trial court reversed the Commissioner's order and set it aside.

Subsequently, and after the overruling of his motion for a new trial, the Commissioner perfected the instant appeal in which, under proper specifications of error, he is entitled to appellate review of the district court's rulings and judgment.

At the outset, and before giving consideration to the issues presented, it should be said appellee does not contest liability on the basis he was not an "employer" within the meaning of the definition of G. S. 1957 Supp., 44-703(h)(1), if the record before us discloses he is a liable employer under other provisions of the employment security law.

In addition, we deem it necessary to point out the function of the district court, as well as this court, in a proceeding seeking judicial review of a decision such as is here involved under express provisions of the employment security law.

G. S. 1949, 44-710b(b), dealing with judicial review in such cases, provides:

". . . In any proceeding under this subsection the findings of the commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law . . ."

Although dealing with an appeal under G. S. 1939 Supp., 44-709(h) and (i), of what was then known as the Unemployment Compensation Law, this court in *Craig v. Kansas State Labor Commissioner*, 154 Kan. 691 Syl. ¶ 2, 121 P. 2d 203, considered identical statutory language and in enunciating the applicable rule as to the function of the respective appellate courts above mentioned, said:

". . . Under the statute the function of the district court on appeal to it, and of this court on subsequent appeal, is not to find facts, but only to determine whether facts found are supported by the evidence before the administrative body. . . ." (p. 694.)

Thus, since the district court in its decision expressly recognized the foregoing limitations upon its power and authority and no one contends fraud is involved, it appears that tribunal must have concluded that the facts on which the Commissioner based his decision, when surveyed in their most favorable light, were wholly insufficient as a matter of law to warrant or uphold his heretofore stated conclusions of law.

It can now be stated, that in a closer approach to the issues, we have carefully read the entire record and are convinced the evidence supports all of the heretofore quoted factual findings made by the appellant (Commissioner). Therefore we turn to questions raised by the parties mindful, as we do so, that any error committed by appellant in his conclusions of law, based on such findings, is subject to judicial review. (*Craig v. Kansas State Labor Commissioner*, supra, Syl. ¶ 3, and page 695.)

From what has been stated it becomes obvious the all-decisive question involved in this case, however argued, is whether the relationship of employer and employee exists between appellee (Read) and the drivers of his taxicabs.

Pertinent provisions of the employment security law, under which appellant assessed contributions against the appellee as a liable employer, will now be noted.

G. S. 1957 Supp., 44-703(*i*), defines the term "employment." It reads:

" 'Employment' means any service, subject to the other provisions of this subsection, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied. . . . (7) Services performed by an individual for wages or under any contract of hire shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commissioner that (*a*) such individual has been and will continue to be free from control of [or] direction over the performance of such services, both under his contract of hire and in fact; and (*b*) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed . . ."

G. S. 1957 Supp., 44-703(*o*), defining "wages," reads:

" 'Wages' means all compensation for services, including commissions and bonuses and the cash value of all remuneration in any medium other than cash."

It is clear from the record presented that in district court the appellant there—appellee here—relied solely on the proposition the involved drivers were independent contractors. Indeed in this court

he states the only question involved is whether he and his drivers stand in the relation of employer and employee or bailor and bailee, and argues that, under the Rental Agreement and the operation of the cab business as testified to by him, the drivers are independent contractors, hence he is not subject to contribution under the employment security law as an employer.

In view of the foregoing and the conclusions to be presently announced, especially since it appears the principal conclusion of law reviewed in the court below was based on the premise the drivers were employees rather than independent contractors, we do not believe it is either necessary or required that we here labor contentions advanced by appellant to the effect the statutory definition of the term "employment," as it appears in the above quoted section of the statute, evidences legislative intent that the common-law standards applicable in determining the status of the relationship of employer and employee or master and servant were not controlling. Even so, and without deciding the question, we feel impelled to state appellant's position on this point finds some support in the authorities. See, e. g., *Sound Cities Gas & Oil Co. v. Ryan*, 13 Wn. 2d 457, 125 P. 2d 246; *Salt Lake Transportation Co. v. Board of Review*, 5 Utah 2d 87, 296 P. 2d 983; *Ross v. Cummins*, 7 Ill. 2d 595, 131 N. E. 2d 521; *Life & Casualty Co. v. U. C. C.*, 178 Va. 46, 16 S. E. 2d 357; *Murphy v. Daumit*, 387 Ill. 406, 56 N. E. 2d 800; 55 Yale Law Journal, pp. 76 and 86; 8 Vanderbilt Law Review, pp. 245 and 255; 48 Am. Jur., Social Security, Unemployment Insurance, Etc., pp. 524 to 526, incl. and 527 §§ 17, 19.

In giving consideration to appellee's position respecting his status, and that of his drivers, under the contract, the evidence and the administrative findings, we can turn to our own decisions for general rules defining masters and servants and independent contractors. See *Houdek v. Gloyd*, 152 Kan. 789, 107 P. 2d 751, where it is held:

"A master is a principal who employs another to perform service for him, and who controls or has the right to control the physical conduct of the other in the performance of such service, and the servant is the person so employed.

"An independent contractor is generally one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work." (Syl. ¶¶ 2, 3.)

For more recent decisions, approving the foregoing rules, see *Sims v. Dietrich*, 155 Kan. 310, 124 P. 2d 507; *Bush v. Wilson & Co.*, 157 Kan. 82, 86, 87, 138 P. 2d 457.

With respect to the "right to control," mentioned in the first of the foregoing rules, it has frequently been pointed out that this means the right to control, not the actual interference or exercise of control, by an employer. (*Bush v. Wilson & Co.,,* supra, page 86; *Sims v. Dietrich,* supra, page 312; *Schroeder v. American Nat'l Bank,* 154 Kan. 721, 121 P. 2d 186; *Mendel v. Fort Scott Hydraulic Cement Co.,* 147 Kan. 719, 78 P. 2d 868.)

When the heretofore quoted facts found by the appellant (Commissioner), which we pause for purposes of emphasis to repeat, are supported by the evidence and therefore conclusive and binding, are carefully analyzed, we are convinced they disclose that the appellee not only had the right and authority to direct and control the manner in which his drivers carried on their operations but to a certain extent actually exercised those rights. Therefore we have little difficulty in concluding that, under our own decisions, such facts were sufficient to warrant and uphold appellant's overall conclusion of law that such drivers, under their contract with appellee, were employees, rather than independent contractors. Having so concluded, it necessarily follows, the trial court's holding that the legal relationship between appellee and his drivers is one of contract and bailment is erroneous and cannot be upheld. This, we may add, is true even though our research has failed to disclose any case which, from the standpoint of facts involved, can be said to be identical with the one here involved. Be that as it may, we are not compelled to base our conclusions solely upon our own decisions. Our research discloses several cases from sister states which reach a like conclusion and, in our opinion, from the standpoint of agreements, facts, issues and principles involved, are so similar to the case at bar they may be regarded as controlling precedents. (*Kaus v. Unemployment Com.,* 230 Iowa 860, 299 N. W. 415; *In re Farwest Taxi Service, Inc.,* 9 Wn. 2d 134, 114 P. 2d 164; *Myers v. Cummins, Director of Labor,* 9 Ill. 2d 582, 138 N. E. 2d 491; *Redwine v. Wilkes,* 83 Ga. 645, 64 S. E. 2d 101; *Radley v. Commonwealth,* 297 Ky. 830, 181 S. W. 2d 417.)

In conclusion it should be stated we have not ignored appellee's contentions that in *Martin v. Wichita Cab Co.,* 161 Kan. 510, 170 P. 2d 147, we held that the finding inherent in the trial court's judgment, that the relationship between a taxicab company and the drivers of cabs was not that of master and servant but one of contractor and contractee akin to a bailment, was supported by evidence. One distinguishing feature in that case comes from the

fact that there it was the district court's province to pass upon the facts where—as here—the facts found by the involved administrative agency were conclusive upon the trial court and its jurisdiction was confined to questions of law. Moreover, in our opinion, other factors present in that case (See the opinion, particularly the last full paragraph at page 517), not present in this, make it clearly distinguishable.

Neither have we overlooked *Party Cab Co. v. United States*, cited by appellee as appearing in 10 A. L. R. 2d 358. It suffices to say it is our view, that under the controlling facts, that case is also distinguishable.

Nor have we ignored the fact appellee relies upon a letter from the United States Treasury Department, which he produced in district court, stating in substance that in the same situation as is here involved, another cab owner was advised that his taxicab drivers were in fact independent contractors and not subject to the Federal Unemployment Tax Act. The short and simple answer to all contentions made with respect to such letter is that this court is not bound by decisions of the Treasury Department with respect to such matters and is disposed to adhere to the decisions to which it has heretofore referred.

What has been heretofore stated and held means that the trial court's decision and judgment reversing and setting aside the order of the appellant (Commissioner) was erroneous and must be reversed.

It is so ordered.