No. 41,443

D. L. WARBURTON, d/b/a DELUXE CAB COMPANY, *Appellee,* v. R. L. WARKENTIN, STATE LABOR COMMISSIONER, *Appellant.*

(345 P. 2d 992)

Opinion filed November 7, 1959.

*Chas. H. Cory,* of Topeka, argued the cause and was on the brief for appellant.

*Clement . H. Hall,* of Coffeyville, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This appeal, authorized by G. S. 1949, 44-710b (c), is by the Labor Commissioner of the State of Kansas from a judgment of the district court of Montgomery County, Kansas, which reversed a decision of the State Labor Commissioner holding D. L. Warburton, d/b/a Deluxe Cab Company, to be a liable employer under the Kansas Employment Security Law. (G. S. 1949, 44-701, *et seq.,* as amended.)

Basically two questions are presented: (1) Whether the relationship of employer and employee exists between the appellee, D. L. Warburton, and the drivers of his taxicabs within the meaning of the provisions of G. S. 1957 Supp., 44-703(*i*) and (*o*) of the Employment Security Law, and (2) whether the Labor Commissioner may issue an order establishing the appellee's liability for contributions as a contributing employer under the Kansas Employment Security Law *retroactively.*

The facts disclosed by the record, except for minor factual differences, are the same as those which confronted the court in *Read v. Warkentin, Commissioner,* 185 Kan. 286, 341 P. 2d 980. In fact, counsel for the respective parties in the *Read* case (No. 41,438) and in the instant case (No. 41,443) joined in a motion to consolidate the two cases in this court. The motion to consolidate was denied on May 1, 1959. In such motion counsel for the respective parties disclosed "that all except one of the major issues involved in each of said cases are the same." Question No. 1 above was presented in the *Read* case but not question No. 2.

It is therefore unnecessary in the instant case to present the facts or review the law regarding question No. 1. The answer to this question is controlled by *Read v. Warkentin, Commissioner,* supra. Concerning this question we hold on the basis of the factual situation presented by the record herein, which is identical in all material respects to those presented in the *Read* case, that an employer-employee relationship existed between Warburton and the drivers of his taxicabs, and as a result Warburton is a liable employer under the Kansas Employment Security Law. Therefore,

the conclusion of the trial court that the involved taxicab drivers were independent contractors is erroneous.

Only the facts necessary to dispose of the second question will be related.

D. L. Warburton lived in Coffeyville, Kansas, and owned six automobiles which were driven as taxicabs in the city of Coffeyville. When Warburton started his operation in 1952, he made contributions under the Employment Security Law of the State of Kansas as a liable employer through *voluntary election*. He thus automatically became a liable employer for a minimum of two calendar years. (G. S. 1957 Supp., 44-711[a] and [c][1].)

In the process of administering the Employment Security Law contributing employers are called upon periodically by field representatives of the Employment Security Division. These field representatives make reports to the Topeka office. On June 22, 1953, A. L. Douglas, a field representative of the Employment Security Division, made a field visit to Mr. Warburton's place of business in Coffeyville. In his report to the Security Division he said in his comments and summary: "Warburton has cut his regular employment to 3 with an occasional extra helper."

Almost a year later, after another visit with Warburton, another field representative in his written report to the Employment Security Division stated: "Mr. Warburton desires to terminate his liability effective Dec. 31, 1953. I furnished him with KUC 136. He promised to have KUC 136 in our office by June 1."

The application (on form KUC 136 provided by the Employment Security Division) for termination of coverage was completed and subscribed and sworn to by Warburton on May 26, 1954, and filed with the then Labor Commissioner, P. G. Baird. In this application Warburton stated that during each calendar week during the calendar year 1953 the greatest number of employees he had in any single day in each of said weeks was three. The instructions on the reverse side of the application form supplied to Warburton by the Labor Commissioner include the following statement: "After the application has been considered by this agency and the *employment verified*, one copy showing the Labor Commissioner's decision will be returned to you." (Emphasis added.)

On June 8, 1954, Commissioner Baird passed on the application and issued his order terminating the liability of Warburton as a contributing employer. The notice of termination stated, among other

things: "This action terminates your legal liability for contributions on all wages paid in Kansas." The order stated that the application had been "Approved in accordance with Section 44-711($b$) of the Kansas Employment Security Law." Thus, as of December 31, 1953, the effective termination date, Warburton ceased to make contributions as a liable employer under the Kansas Employment Security Law. He continued his operations in the same location in Coffeyville, under the same name and in exactly the same manner, for the years 1954, 1955 and 1956. After Commissioner Baird had terminated Warburton's liability as a contributing employee, Warburton then communicated with the Internal Revenue Service in Wichita, Kansas, to determine whether he was required to withhold and remit federal income tax on the taxicab drivers, and whether he was required to pay federal unemployment tax on the cab drivers. On November 22, 1955, Lynn R. Brodrick, District Director, advised Warburton in writing that the Internal Revenue Service did not consider him a common law employer of taxicab drivers, and advised Warburton he had no liability to withhold income taxes or pay federal unemployment tax on the taxicab drivers.

By act of the 1955 session of the legislature (Laws of 1955, Ch. 251, § 1, now appearing as G. S. 1957 Supp., 44-703 [$h$]) coverage on employers of eight or more individuals was expanded to coverage on employers of four or more. As a result of this amendment the Kansas Employment Security Division made a routine check of employers who might be liable under the act as amended. Thus, on or about December 19, 1956, a routine inspection at Warburton's place of business was made for the year 1956 by Duane C. Koll, a field representative of the Kansas Employment Security Division to whom Warburton's file had been assigned. As a result of this inspection Warburton and his attorney were contacted by Mr. Koll about December 19, 1956, who contended that Warburton's taxicab drivers were his employees, thus making him liable as a contributing employer under the Kansas Employment Security Law. Warburton's records were complete and well kept. Mr. Koll admitted no one made any effort to misrepresent any facts to him or withhold information from him and that *the problem was the correct legal conclusion to be drawn from the facts.* It was conceded by Warburton that if the taxicab drivers were his employees he had twenty weeks in which he had employed eight or more individuals for the year 1953 and subsequent years.

After two extended hearings in Topeka, Kansas, the then Commissioner, R. L. Warkentin, on March 16, 1957, issued a "Notice of Establishment of Employer Account," whereby Warburton's liability for contributions as a contributing employer under the Kansas Employment Security Law was "re-established, effective January 1, 1954." By this order, retroactive to and including the year 1954, several thousand dollars in delinquent contributions with interest were assessed against Warburton.

The above order was appealed to the district court of Montgomery County, Kansas, which on October 20, 1958, set aside the order and entered judgment in favor of Warburton, after concluding that the relationship between Warburton and the taxicab drivers was not one of employment or master and servant but one of independent contract.

Since the filing of this appeal in the Supreme Court Harold L. Smith has succeeded R. L. Warkentin as State Labor Commissioner and his name has been substituted as party appellant in this action.

The appellant takes the position that the appellee Warburton made no attempt to obtain a ruling from the Commissioner on a true statement of facts, relative to his termination of liability under the Employment Security Act, until the matter was investigated by the appellant in 1957. It is argued by the appellant that whether the taxicab drivers under appellee's rental agreement were in employment was a highly controversial matter, and Commissioner Baird approved the termination of appellee's coverage effective December 31, 1953, on the basis of appellee's sworn statement in the application stating that he had only three employees.

The record does not support the appellant on this point. There is no evidence whatever that the appellee made a fraudulent statement to the Commissioner relative to his termination of liability under the Employment Security Act.

G. S. 1949, 44-711(*b*), provides:

*"Termination of contributions.* Except as otherwise provided in subsection (*c*) of this section, an employing unit shall cease to be an employer subject to this act only as of the 1st day of January of any calendar year, if it files with the commissioner, prior to the first day of March of such calendar year, a written application for termination of coverage, *and the commissioner finds that there were no twenty different days, each day being in a different calendar week within the preceding calendar year within which such employing unit employed eight or more individuals in employment subject to this act;* . . ." (Emphasis added.)

Appellee's application for termination of liability for contributions under the act was made on a form furnished by a field representative of the Employment Security Division. It must be assumed that Commissioner Baird followed the statute and made a finding that Warburton did not have sufficient employees for a sufficient number of weeks to bring him within the act. Furthermore, the appellee was entitled to assume that Commissioner Baird followed the instructions set forth on his form to the effect that he "verified the employment" which appellee reported to him. The record discloses that the field representatives who had previously called on the appellee were familiar with his taxicab business by reason of on-the-spot investigations.

Field representative Koll was conscious of the position in which appellee had been placed by the retroactive order when he recommended waiver of interest in his letter to his superior on February 28, 1957, in which he said, among other things:

"In view of the fact that D. L. Warburton may have been poorly advised by this agency regarding the status of the cab drivers during the year of 1954, I wish to make this recommendation . . ."

Field representative Koll also recognized that the appellee had disclosed all the facts and that the Employment Security Division knew all the facts when it held he was not liable as a contributing employer. In his report to his superior on December 19, 1956, he stated, among other things:

". . . Mr. Warburton was very co-operative but was unable to fathom such beliefs as mine in that he had successfully convinced the Social Security Adm. and *this agency* in 1954 that his drivers were independent contractors."

The district court of Montgomery County, Kansas, disposed of the contention that appellee had concealed facts by its specific finding that the claim of concealment was not supported by the evidence. After making the above finding the trial court in its memorandum opinion went on to say:

". . . If equity and fair play have any place in our jurisprudence, the court feels it should apply here. Certainly a citizen and taxpayer who has been relieved in accordance with statute of a tax burden no longer applicable by the order of duly constituted authority in the manner prescribed by law by appropriate order duly entered, certainly he should not be subjected to an *ex parte* order of a successor official years later holding the former order was wrong and void, although the operation was substantially the same, and subjecting the taxpayer to the tax retroactively for all the intervening years. There could be no more harsh method of wiping out a man's business, although he

had been led to believe all the time he was conducting his affairs lawfully. If such a reversal can be made 3 years later, why not 20 or 30 years later?"

The appellee contends that the order of Commissioner Baird dated June 8, 1954, was unappealed from and became final ten days after it was mailed on June 12, 1954, and a successor commissioner did not have the authority by law to change the order, retroactively, on March 16, 1957. The provision of the statute relied upon is G. S. 1949, 44-709(*h*), which reads:

"*Court review.* Any decision of the commissioner in the absence of judicial review therefrom as herein provided shall become final ten days after the date of mailing thereof, and judicial review thereof shall be permitted only after any party claiming to be aggrieved thereby has exhausted his remedies before the commissioner as provided by this act . . ."

This section of the statute does not support the appellee. It applies only to a party claiming to be aggrieved by a decision of the Commissioner. It contemplates judicial review of the Commissioner's decision only by the party aggrieved after he has exhausted his remedies before the Commissioner.

The position taken by the appellee is that the order of termination was final and the Commissioner thereafter had no power of reconsideration, rehearing or modification of the order under the act. We do not so construe the Employment Security Act.

The following is stated in 42 Am. Jur., Public Administrative Law, § 174, pp. 535, 536 and 537:

". . . it is often held that administrative tribunals, in the absence of statute, have no power to reconsider, grant a rehearing on, or set aside, their final determinations. The power of administrative authorities to reconsider or modify their own determinations may exist by reason of express provision of statute, or its existence may be inferred from a statutory provision. Lacking this, whether the power exists depends upon an interpretation of the entire statute and policy applicable to the particular administrative agency. Administrative determinations are subject to reconsideration and change where they have not passed beyond the control of the administrative authorities, as where the determinations are not final, but interlocutory, or where the powers and jurisdiction of the administrative authorities are continuing in nature . . ."

Construing the entire Employment Security Act as amended, taking particular note of the declaration of state public policy (G. S. 1949, 44-702), the provisions for contributions which accrue and become payable by each employer for each calendar year (G. S. 1957 Supp., 44-710), the obligations imposed upon the Commissioner to classify employers in accordance with their actual experi-

ence in the payment of contributions for each calendar year (G. S. 1957 Supp., 44-710a), and the manner in which contributions may be terminated (G. S. 1957 Supp., 44-711), we do not hesitate to state it was the intention of the legislature that the powers and jurisdiction of the State Labor Commissioner be continuing in nature.

The administrative tribunal having continuing jurisdiction over its orders may not run counter to other provisions of the statute in modifying or changing its orders; neither may such changes be arbitrary or groundless. The primary purpose of a continuing jurisdiction is to give an administrative tribunal power to modify or change a decision or order to meet changed conditions.

Administrative bodies are not ordinarily bound by their prior determinations or the principles or policies on which they are based. The doctrine of *res judicata* does not ordinarily apply to decisions of administrative tribunals. (*Pearson v. Williams,* 202 U. S. 281, 26 S. Ct. 608, 50 L. Ed. 1029.) It is intrinsically a judicial doctrine not to be applied unwittingly to legislative or executive activities which administrative bodies are sometimes empowered to exercise in addition to the judicial one. There is present in administrative law an aspect of discretion which is absent in the strict application of *res judicata* in the judicial system, and it is this difference which permits agencies to do again what courts may not, and which therefore requires examination of particular cases. (See, Forkosch, Administrative Law, § 308, p. 594; Parker, Administrative Law [1952], p. 245, *et seq.;* Gregory, Administrative Decisions as Res Judicata, [1941], 29 Cal. L. Rev. 741; Schopflocher, The Doctrine of *Res Judicata* in Administrative Law, 1942 Wis. L. Rev. 198; and Notes: 4 Rutgers L. Rev. 706 [1950]; 49 Colum. L. Rev. 640 [1949]; and 49 Yale L. J. 1250 [1940].)

*Stare decisis* is not, like the rule of *res judicata,* a universal, inexorable command. The rule of *stare decisis,* though one tending to consistency and uniformity of decision, is not inflexible. Whether it shall be followed or departed from is a question entirely within the discretion of the court, which is again called upon to consider a question once decided. (Brandeis, J., dissenting, in *Burnet v. Coronado Oil & Gas Co.,* [1932], 285 U. S. 393, 406, 52 S. Ct. 443, 76 L. Ed. 815.) The doctrine of *stare decisis* is a strong factor in building up internal administrative law, and in influencing the judiciary in its reviews of the administrative determinations. But an administrative agency may refuse to follow its prior ruling when its action is not

oppressive or it does not act arbitrarily, unreasonably, or capriciously. (*Labor Board v. Seven-Up Co.*, [1953], 344 U. S. 344, 73 S. Ct. 287, 97 L. Ed. 377; *Lesavoy Foundation v. Commissioner of Internal Rev.*, [1956, C. C. A. 3], 238 F. 2d 589; *National Labor Relations Bd. v. Guy F. Atkinson Co.*, [1952, C. C. A. 9], 195 F. 2d 141; and see, Forkosch, Administrative Law, § 307, p. 591.) Thus, it has been said, the doctrine of *stare decisis* is not generally applicable to decisions of administrative tribunals. (See 73 C. J. S., Public Administrative Bodies and Procedure, § 148, p. 482.)

In the instant case, simply stated, the only question before the Commissioner was *the legal conclusion to be drawn from the facts* which were not in dispute. That is, was the relationship of Warburton to the taxicab drivers one of employment or one of independent contract?

An administrative determination in which is embedded a legal question open to judicial review does not impliedly foreclose the administrative agency, after its error has been corrected, from enforcing the legislative policy committed to its charge. (*Federal Comm'n v. Broadcasting Co.*, 309 U. S. 134, 60 S. Ct. 437, 84 L. Ed. 656.)

Certainly an administrative agency, charged with the protection of the public interest, is not precluded from taking appropriate action to that end because of mistaken action on its part in the past. (*National Labor Relations Board v. Baltimore T. Co.*, [C. C. A. 4], 140 F. 2d 51, 55. Certiorari denied *Baltimore Transit Co. et al. v. National Labor Relations Board*, 321 U. S. 795, 64 S. Ct. 848, 88 L. Ed. 1084.)

On the basis of our construction of the Kansas Employment Security Act and after fully considering the foregoing authorities, we think the law is clear that the Commissioner under the Kansas Employment Security Act may reconsider a previous order based upon an erroneous conclusion of law and change it. But it is quite a different matter to say, having once changed the legal conclusion to be drawn from the facts, the Commissioner may arbitrarily and without limit have the effect of such change go back over previous years during which the appellee operated under the previous order made by a previous Commissioner. Upon all the facts, conditions and circumstances presented by the record in the instant case we regard the retroactive feature of the Commissioner's order issued on March 16, 1957, to be oppressive action. It is arbitrary, unreasonable and capricious.

This was a small taxicab business in which the profits were small. The evidence discloses that the cost of operating the taxicabs was fifteen cents per mile; that the proficiency of the taxicab drivers varied all the way from unprofitable operation to twenty-five cents per mile gross income. The profitableness varied not only with the drivers but also with the weather and the seasons of the year. It is apparent from the record the retroactive assessment against the appellee could have the effect of wiping out his business.

Our previous discussion of the facts makes it clear that the appellee himself would not be estopped from relying on the order of Commissioner Baird in good faith. The appellee did not conceal the facts or make any misrepresentation or otherwise commit a fraud. We think it apparent that the practical operation of the changed decision of Commissioner Warkentin in 1957, when incorporated in the order now before us, is to work hardship upon the appellee altogether out of proportion to the public ends to be accomplished. The inequity of such an impact of retroactive action upon an employer innocent of any conscious violation of the Employment Security Law, and who was unable to know, when he acted, that he was guilty of any conduct of which the Commissioner would take cognizance, is manifest. It is the sort of thing our system of law abhors.

A case closely analogous to the situation presented herein is found in *Lesavoy Foundation v. Commissioner of Internal Rev.*, supra, (1956, C. C. A. 3), where the Commissioner of Internal Revenue changed a ruling with respect to a taxpayer and applied it retroactively. It was there held that the Commissioner could not change retroactively a ruling of exemption, where the foundation had committed no fraud and made no misstatement, where the question of exemption involved "at least an arguable question of law," and where the effect of the retroactive change would have been to impose upon the foundation (claiming charitable exemption) a tax bill "so large as to wipe it out of existence." The Commissioner was said to have acted *arbitrarily and exceeded the bounds of permissible discretion* when he revoked the exemption granted to the foundation and gave it retroactive effect.

Although somewhat different in type, another federal case involving the same principle is *National Labor Relations Bd. v. Guy F. Atkinson Co.*, supra, (1952, C. C. A. 9). There the National Labor Relations Board changed its policy by extending its juris-

diction after the company had discharged a worker at the demand of a union under a closed shop agreement. The board held the discharge of such worker was an unfair labor practice and gave effect to the policy change retroactively for a number of years. The court there held the retroactive action of the board in holding the employer guilty of an unfair labor practice for discharging an employee who failed to maintain his membership in the union, was *arbitrary, capricious and an abuse of discretion.* It therefore denied enforcement of the board's order insofar as it had retroactive effect but excepted from its holding those portions of the order which operated prospectively.

It may be noted that the scope of review in the above federal cases was defined by statute (Title 5, U.S.C., § 1009[e]), the pertinent portion of which provided that the reviewing court shall hold unlawful and set aside agency action, findings and conclusions found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

The legal concept for which the above federal cases are cited has not been adequately portrayed by the foregoing summaries of such cases. The reader is referred to these opinions for a full discussion of the question.

While Kansas does not have an administrative procedure act, it has been held that our courts have jurisdiction over special tribunals established by statute, even though no right of appeal has been conferred by statute from the decisions of such special tribunals. The rules concerning ministerial acts of special tribunals established by statute and of public officers are well stated in *Allen v. Burrow,* 69 Kan. 812, 77 Pac. 555, as follows:

"It has often been said of special tribunals established by statute to pass on matters expressly committed to them that their jurisdiction is exclusive and their determinations final, and that courts will not review their conclusions nor inquire by what method they were reached, *but always with an express or implied reservation that the statement holds good only where the action of such tribunal is characterized by good faith, and is free from fraud, corruption, and oppression* . . . No rule is better settled than that courts will not interfere with public officers in the discharge of any duty involving the exercise of judgment or discretion, but this rule presupposes the existence of good faith, and relates to acts done under the guidance of opinions honestly formed, however mistaken in fact; it has no application to acts done under the influence of a corrupt motive. *Even arbitrary and capricious conduct, amounting to an abuse of discretion, will justify mandamus to compel a proper performance of duty, upon the theory that there has been, in fact, no real exercise of judgment* . . ." (Emphasis added.) (pp. 820, 821.)

The foregoing rules stated in *Allen v. Burrow,* supra, were approved in *Anderson v. Hedges,* 160 Kan. 665, 165 P. 2d 425, where many authorities on this subject are reviewed (reference is made thereto). (See *Gray v. Jenkins,* 183 Kan. 251, 326 P. 2d 319.)

If our courts are open to hear meritorious complaints against illegal or oppressive acts of nonjudicial public boards and officials by invoking some extraordinary legal remedy recognized in our practice, where no statute confers a right of appeal, (*State, ex. rel., v. Mohler,* 98 Kan. 465, 158 Pac. 408) *a fortiori,* such action or conduct is subject to review by our courts where a statutory right of appeal exists, as here.

The situation presented by the facts in the instant case is sometimes handled by courts on the theory of equitable estoppel. But courts in the past have usually held the doctrine of equitable estoppel does not apply to the government. The erosion of the doctrine of governmental immunity is clearly underway, but among the remnants of sovereign immunity is the notion, which still prevails in many decisions, that estoppel cannot run against the government. For an interesting discussion of this topic see the work of Professor Kenneth Culp Davis, Administrative Law Treatise, Volume 2, Sections 17.01 to 17.09 inclusive, pages 491 to 544 inclusive. Some courts have categorically stated that the doctrine of equitable estoppel will be applied against governmental bodies where justice and right require it. (*Denver v. Stackhouse,* [1957], 135 Colo. 289, 310 P. 2d 296; and *Sawyer v. City of San Diego,* [1956], 138 C. A. 2d 652, 662, 292 P. 2d 233, 239.)

Briefing by counsel for the respective parties on the point of equitable estoppel has been inadequate, and upon the facts, conditions and circumstances presented by this record we find it unnecessary to delve into the question at this time. (See, West's Kansas Digest, Estoppel, § 62.)

What has heretofore been said concerning the order of Commissioner Warkentin issued on March 16, 1957, has no application to the order establishing the appellee's account insofar as it has prospective operation. The agency through its field representative first made known to the appellee the fact that it was claiming contributions under the Employment Security Law in the year 1956. This was notice to the appellee, and even though the ultimate determination as a result of investigation was not made by an order of Commissioner Warkentin until March 16, 1957, the appellee

having been apprised of the claim in the year 1956 is subject to the order of the Commissioner for the year 1956 and subsequent years. (See G. S. 1949, 44-711[a].)

. The judgment of the trial court is affirmed insofar as it relates to the years 1954 and 1955, and is reversed insofar as it relates to the year 1956 and subsequent years.