No. 55,788

VERNON O. WALLIS, KIRBY VACUUM CLEANER CO., DODGE CITY, KANSAS, *Appellee*, v. SECRETARY OF KANSAS DEPARTMENT OF HUMAN RESOURCES, STATE OF KANSAS, *Appellant*.

(689 P.2d 787)

Opinion filed October 26, 1984.

*H. Dean Cotton*, of Topeka, argued the cause and was on the brief for appellant.

*Eldon L. Ford*, of Cosgrove, Webb & Oman, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: This is an appeal from the District Court of Ford

County. The trial judge reversed the findings and rulings of the Secretary of Human Resources and found certain persons selling vacuum cleaners were independent contractors rather than employees.

The plaintiff, Vernon O. Wallis (Wallis), is the proprietor of Kirby Vacuum Cleaner Co. (Kirby), Dodge City, Kansas. The Kansas Department of Human Resources (KDHR) conducted a hearing on December 21, 1981, to determine whether individuals who are dealers of Kirby Vacuum Cleaners were employees of Wallis or were independent contractors under K.S.A. 44-703(i)(1)(B) and K.S.A. 44-703(i)(3)(D). The hearing officer made findings of fact and determined that the dealers were employees and not independent contractors and that assessments of unemployment taxes made by the KDHR against plaintiff for such individuals were owed. Wallis requested a review by the Secretary of Human Resources (Secretary). The Secretary adopted the hearing officer's findings of fact and determined the individuals were employees of Wallis, not independent contractors.

Wallis petitioned for judicial review pursuant to K.S.A. 44-710b(b). The district court heard the matter on January 14, 1983, and issued a decision containing findings of fact and conclusions of law. The district court adopted the findings of fact of the hearing officer, and found the jurisdiction of the district court was confined to questions of law. The district court determined that the dealers were independent contractors, not employees under common law rules and statutory definitions, and accordingly abated the taxes collected.

The findings of fact adopted by the district court are:

"(1) Vernon O. Wallis hereinafter referred to as the appellant, is the proprietor of Kirby Vacuum Cleaner Company of Dodge City, Kansas performing services at 306 West Highway 56, Dodge City, Kansas. Mr. Wallis is a direct factory distributor of the Kirby Company including all accessories to the sweeper, customarily produced by such company. Mr. Wallis is the distributor for the western section of the State of Kansas.

"(2) Within the premises found at 306 West Highway 56, Dodge City, Kansas, are housed a service technician, an office for Mr. Wallis, and a display area wherein two secretaries perform the clerical function of the business. Incorporated within the duties of the secretaries is the sale of the product to those who might enter the premises to purchase the cleaner or accessories thereto on a retail basis.

"(3) Mr. Wallis is in the business of selling vacuum sweepers generally on a door-to-door basis within area of the distributorship. To accomplish the aforego-

ing, Mr. Wallis recruits through advertisements and by word of mouth potential 'dealers' to carry out the sale of vacuum sweepers within his distributorship. Prior to beginning the process of selling, dealers sign what is designated as an independent dealer agreement as set forth in Exhibit #1 during the course of the hearing.

"(4) The newly associated dealers began a training course carried out by key personnel including Mr. Wallis, his son, Mr. Cole, and other experienced and qualified sales personnel. New dealers are oriented with the product and counselled with regard to beneficial sales techniques with reference to such product. New dealers are accompanied by more experienced dealers during the early course of their sales experience on a door to door basis. Each dealer receives 'a sales kit' from Mr. Wallis.

"(5) A 'sales receipt' is effectuated between the dealer and the distributor to provide the dealer with a vacuum sweeper to sell. The receipt requires the dealer to be responsible to the distributor for the machine and its value irrespective of damage or loss to the machine while in the keeping of the dealer. The dealers are expected to compensate Mr. Wallis for the machine within a 30 day period from the date the receipt is effectuated. The machine dispersed by Mr. Wallis may be returned if unsold.

"(6) Dealers in an effort to sell Kirby vacuum sweepers, are not compensated or reimbursed for expenses incurred nor do they receive a minimum salary or other fringe benefits save only what has been eluded to on page 69 and 70 of the transcript as a profit sharing plan provided by Mr. Wallis to his dealers. The profit sharing plan is to help compensate those who train other dealers as such new dealers will sell the product therein creating more revenue for dispersal among those who share within the plan. Dealers generally are free to establish their own hours of service and the territories they shall serve.

"(7) Dealers who are distributed to by Mr. Wallis are not responsible for the repossession of sweepers previously sold. Dealers are provided no office space to perform services within, and do not sell competing products. Dealers may negotiate the price of the product to the customer with the proceeds and the contract of sale to be reviewed for acceptance by the distributor, in this instance, Mr. Wallis, as set forth on page 19, line 6. Dealers do not service the equipment sold and must complete and process warranty cards prior to their receipt of the proceeds from the sale. All monies as herebefore set out are deposited with Mr. Wallis then dispensed back to the dealer subsequent to the three day waiting period required under Kansas Statutory Law for sales of this nature.

"(8) In Section 8 of the Independent Dealer Agreement as herebefore set out, are set forth the provisions of the time for which this agreement is entered into and the right of either party to cancel such agreement. Mr. Wallis, as a distributor, provides that within 30 days written notice the agreement may be terminated with a dealer and vice versa. The distributor may withhold the product to be sold by dealers as another avenue to terminate the agreement as herebefore set out. Mr. Wallis as set forth in line 23 of the transcript on page 28, further terminates the agreement in those instances wherein he finds the dealer to be not representative of the product or the product line as he shall 'let him go' with reference to a dealer who does not conform with the expectations of the distributor.

"(9) The dealer who sells Kirby vacuum sweepers on a door-to-door basis has

not a business to offer for sale within the market place. The dealer must work through the distributor or other dispersing agents of the Kirby Company to obtain the product he or she sells to the customer."

After receiving the decision of the court dated January 27, 1983, but prior to the filing of the Journal Entry, KDHR filed a first Notice of Appeal on February 28, 1983. The Journal Entry was filed on May 9, 1983. On May 31, 1983, KDHR filed a second Notice of Appeal.

KDHR raises two issues:

1. Whether the district court applied the proper standard for a review of an administrative officer's findings of fact under K.S.A. 44-710b(b).

2. Whether the district court correctly determined the question of law based on the findings of fact.

The statutory provision granting judicial review of decisions rendered by the Secretary concerning tax assessments is K.S.A. 44-710b(b). The relevant part of the statute states that "In any proceeding under this subsection the findings of the secretary of human resources as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law."

The only case in which this section of the statute has been mentioned is *Wesley Medical Center v. McCain,* 226 Kan. 263, 597 P.2d 1088 (1979). The case actually dealt with the constitutionality of the Kansas Employment Security Act. The court held the Act did not violate either the due process or equal protection clauses of the 14th Amendment to the Constitution of the United States or Section 18 of the Bill of Rights of the Constitution of the State of Kansas. In one paragraph, Justice Herd mentioned the pertinent section of the statute:

"As a parting shot under the second issue of error, appellants argue the 'array method' of computing contribution rates under K.S.A. 1975 Supp. 44-710a was not followed by the Department of Human Resources in determining appellants' rate. This is a question of fact. On appeal this court's jurisdiction is confined to questions of law if the Secretary of Human Resources' findings are supported by some evidence, absent fraud. K.S.A. 1978 Supp. 44-710b(*b*). There is no allegation or evidence of fraud against the Secretary of Human Resources and we find there is evidence to support his findings. The findings of the Secretary of Human Resources will therefore not be disturbed." 226 Kan. at 272.

The KDHR argues that since the *McCain* case said only "some" evidence was needed to support the Secretary's find-

ings, the district court should not have reversed the Secretary. Wallis, however, argues that "substantial" evidence is required before a district court must follow an administrative decision. The statute itself says only "evidence."

At the judicial review, the district judge stated that he would examine the evidence to determine "whether or not there is substantial evidence"; that determination was never made since the judge made no findings of fact but adopted the findings of fact of the hearing officer. Where the district court adopts the hearing officer's findings of fact in total, it is then limited by K.S.A. 44-710b(b) to considering questions of law.

The trial judge correctly stated the question of law to be: "Do the findings of fact create an employee-employer relationship as a matter of law?" To make that determination the district court, when reviewing the Secretary's ruling, considers the statutes and Kansas cases discussing the employer-employee relationship. K.S.A. 44-703(i)(1)(B) provides:

"(i) 'Employment' means:

"(1) Subject to the other provisions of this subsection, service, including service in interstate commerce, performed by

. . . .

"(B) Any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee."

### K.S.A. 44-703(i)(3)(D) provides:

"(D) Services performed by an individual for wages or under any contract of hire shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the secretary that: (i) Such individual has been and will continue to be free from control or direction over the performance of such services, both under the individual's contract of hire and in fact; and (ii) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed."

Where the findings of the hearing officer and the Secretary are contrary to the evidence, it presents a question of law which is always open to review by the courts. In reviewing questions of law, the trial court may substitute its judgment for that of the agency, although ordinarily the court will give great deference to the agency's interpretation of the law. *Richardson v. St. Mary Hospital,* 6 Kan. App. 2d 238, 242, 627 P.2d 1143, *rev. denied* 229 Kan. 671 (1981).

The hearing officer based his ruling on K.S.A. 44-703(i)(1)(B), K.S.A. 44-703(i)(3)(D), and *McCarty v. Great Bend Board of Education*, 195 Kan. 310, 403 P.2d 956 (1965). *McCarty* is a workers' compensation case. The defendants claimed McCarty was an independent contractor at the time of his injury. In discussing the applicable rules, this court stated:

"[A]n independent contractor is one who, in the exercise of an independent employment, contracts to do a piece of work according to his own methods and who is subject to his employer's control only as to the end product or final result of his work. (*Krug v. Sutton*, 189 Kan. 96, 366 P.2d 798.) On the other hand, an employer's right to direct and control the method and manner of doing the work is the most significant aspect of the employer-employee relationship, although it is not the only factor entitled to consideration. An employer's right to discharge the workman, payment by the hour rather than by the job, and the furnishing of equipment by the employer are also indicia of a master-servant relation. (*Jones v. City of Dodge City*, [194 Kan. 777].)" 195 Kan. at 311-12.

The *McCarty* court found more of these factors present than not and ruled the plaintiff was an employee.

An independent contractor is generally described as one who, in exercising an independent employment, contracts to do certain work according to his own methods, without being subject to the control of his employer, except as to the results or product of his work.

There can be no absolute rule for determining whether an individual is an independent contractor or an employee. It is the facts and circumstances in each case that determine whether one is an employee or an independent contractor.

Under K.S.A. 44-703(i)(1)(B) the court must look to case law to determine when there is an employer-employee relationship.

This court has often been asked to determine whether an individual is an employee or an independent contractor under the common law. It is often difficult to determine whether a person is one or the other, since there are elements pertaining to relations which occur without being determinative of the relationship. There is no exact method which may be employed to determine whether one is an employee or an independent contractor.

The primary test used by the courts in determining whether the employer-employee relationship exists is whether the employer has the right of control and supervision over the work of the alleged employee, and the right to direct the manner in

which the work is to be performed, as well as the result which is to be accomplished. It is not the actual interference or exercise of the control by the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor. *Jones v. City of Dodge City*, 194 Kan. 777, 402 P.2d 108 (1965).

In *Phillips Pipe Line Co. v. Kansas Cold Storage, Inc.*, 192 Kan. 480, 389 P.2d 766 (1964), one issue was whether a certain individual was an employee or an independent contractor. A landowner hired the person to clean silt out of a drainage ditch at a specified rate of pay per hour. No directions were given as to how the work was to be done and it was done by the workman with his own equipment according to his own methods. In determining as a matter of law that the relationship was that of independent contractor, this court stated:

"At most, Phillips' evidence disclosed that Wirth entered into a contract with Steele whereby Steele was to clean the silt out of the north drainage ditch at a predetermined rate per hour. Nothing else was said; no specifications were given, and the manner in which the work was to be done was left entirely up to Steele. While Phillips' evidence was that Wirth inspected the work and conversed briefly with Steele's employee Southworth, it can by no means be inferred that he reserved the right to direct and control the means or method of performing the work. Wirth's and the appellant's interest was in the result of the undertaking, that is, having the ditch cleaned of silt rather than in the particular method or means by which it was accomplished, and as previously indicated, no right of control was retained by Wirth on his behalf or the appellant's behalf.

"The appellee suggests that since Steele was to be paid at an hourly rate for the work, this was strong evidence of an employer-employee relationship existing between Wirth, the appellant, and Steele. The point is not well taken. In *Smith v. Brown*, 152 Kan. 758, 107 P.2d 718, evidence of payment at an hourly rate for services was introduced in support of an employer-employee relationship, but this court determined that the general law was applicable; that it was the question of the right of control which determined the relationship and affirmed the trial court's order sustaining a demurrer to the plaintiff's evidence." 192 Kan. at 485-86.

There are no Kansas cases with facts similar to those of this case. There are, however, several cases from other jurisdictions with similar facts. In *Kirby Co. of Bozeman v. Employment Sec.*, _____ Mont. _____, 614 P.2d 1040 (1980), a vacuum cleaner distributor filed a petition for judicial review of the decisions of the Board of Labor Appeals finding that the distributor's dealers were employees within the meaning of the state unemployment insurance law. The plaintiff was a direct factory distributor of

vacuum cleaners, purchasing the products directly from the manufacturer and selling them to area distributors and dealers. The dealers were recruited by Kirby. Salespersons signed a one-year written agreement when they became dealers. A Kirby officer gave product demonstrations to new dealers, provided a sales guide booklet, conducted sales clinics for the dealers and furnished leads to the dealers. No hours or territories were set for the dealers, who were not reimbursed for expenses, guaranteed minimum earnings or provided with any fringe benefits. Dealers bought the products from Kirby for cash or on a 30-day open account. Dealers could resell the products at any price and negotiate their own terms on the contracts.

The Montana court discussed two tests for determining whether there was an employer-employee relationship. The statutory test looked at the control an employer has over an individual, whether the service is outside the usual course of the business; and whether the individual is customarily engaged in an independently established trade or business. Under the common law test the court looked at the control the employer had over the individual.

Applying these tests, the court determined that the dealers were employees of the distributor based on the amount of control the distributors had over the dealers. The factors that the court considered relevant were:

"Kirby trained the dealers in the method of marketing Kirby products by giving them initial demonstrations of the products, providing them with a sales guide booklet, and conducting sales clinics. Kirby regulated the price dealers charged for the products by suggesting retail prices which the dealers generally adhered to. Kirby customarily received the dealers' sales receipts and paid the dealers their commissions. Finally, and possibly most importantly, dealers had to be authorized through a wholesale outlet like Kirby to sell Kirby products and Kirby could terminate the contract granting the dealers that authorization without cause on thirty days' notice." _____ Mont. _____, 614 P.2d at 1044.

The same result was reached in *Kirkpatrick v. Peet*, 247 Or. 204, 428 P.2d 405 (1967). The case involved basically the same facts as the Montana case. The court used a statutory test similar to that in *Kirby Co. of Bozeman*, _____ Mont. _____, 614 P.2d 1040, *i.e.*, control by the employer, whether there was an independently established occupation, and whether the dealers were customarily engaged in the business. The court found that the dealers were employees of the distributor:

"The manner in which the dealer's activities were interwoven with those of the plaintiff makes it evident that there was not the independence of occupation contemplated by the statute. We have already alluded to the direction and control under which the dealers operated — direction and control with respect to price, territory and training. Other aspects of the activities of the dealers and plaintiff were interrelated. As we previously mentioned, plaintiff's office was the headquarters and clearing house for the dealers, plaintiff did the bookkeeping and accounting for the dealers, the dealers assigned their conditional sales contracts to plaintiff, the advertising program by which appointments could be made for the dealers was carried on by plaintiff, and there were other interconnected activities. Considering all of the foregoing factors in relation to the objectives of the Unemployment Insurance Act, we are of the opinion that plaintiff is engaged in employment within the meaning of the Act." 247 Or. at 214-15.

*Bevan v. California Emp. Stab. Com.,* 139 Cal. App. 2d 668, 294 P.2d 524 (1956), involved basically the same facts as the Montana and Oregon cases. The court, however, considered only the common law definition of employer-employee and independent contractor. The court found there was sufficient control present to make the vacuum cleaner dealers employees. Similar results under similar facts were also reached in *Hart v. Johnson,* 68 Ill. App. 3d 968, 386 N.E.2d 623 (1979), and *Beaman v. Superior Products, Inc.,* 89 Ariz. 119, 358 P.2d 997 (1961).

The only case which has reached a different result is *Speaks, Inc. v. Jensen,* 309 Minn. 48, 243 N.W.2d 142 (1976). The Kirby vacuum cleaner distributors had been found liable for unemployment compensation under virtually the same circumstances as in the other cases. On appeal, the court, using the common law definition of master-servant, reversed the administrative tribunal. The court said that the degree of control necessary to bring the relationship between the distributor and its dealers within the definition of employment was not present in the record.

In *Read v. Warkentin, Commissioner,* 185 Kan. 286, 341 P.2d 980 (1959), the court considered whether taxicab drivers were employees or independent contractors for purposes of unemployment compensation assessments. We said:

"In giving consideration to appellee's position respecting his status, and that of his drivers, under the contract, the evidence and the administrative findings, we can turn to our own decisions for general rules defining masters and servants and independent contractors. See *Houdek v. Gloyd,* 152 Kan. 789, 107 P.2d 751, where it is held:

" 'A master is a principal who employs another to perform service for him, and who controls or has the right to control the physical conduct of the other in the performance of such service, and the servant is the person so employed.

" 'An independent contractor is generally one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work.' (Syl. ¶¶ 2, 3.)

"For more recent decisions approving the foregoing rules, see *Sims v. Dietrich,* 155 Kan. 310, 124 P.2d 507; *Bush v. Wilson & Co.,* 157 Kan. 82, 86, 87, 138 P.2d 457.

"With respect to the 'right to control,' mentioned in the first of the foregoing rules, it has frequently been pointed out that this means the right to control, not the actual interference or exercise of control, by an employer. (*Bush v. Wilson & Co.,* supra, page 86; *Sims v. Dietrich,* supra, page 312; *Schroeder v. American Nat'l Bank,* 154 Kan. 721, 121 P.2d 186; *Mendel v. Fort Scott Hydraulic Cement Co.,* 147 Kan. 719, 78 P.2d 868.)" 185 Kan. at 292-93.

The *Read* court determined that the drivers were employees because the employer not only had the right and authority to direct and control the manner in which his drivers carried on their operations, but to a certain extent actually exercised these rights.

In the present case, the district judge found that Wallis "had no right to direct and control the method and manner of the dealers in selling vacuum sweepers." Wallis does not provide offices, desk space, or business phones, nor pay dealers' expenses and does not withhold social security or income tax from them.

Wallis does maintain direction and control with respect to the training of dealers as well as price of products. Dealers must be authorized through Wallis who retains the right to terminate the contract without cause on 30 days notice. While the dealers may sell the products in whatever method they feel best accomplishes their goals, Wallis can terminate the contract with the dealer "in those instances wherein he finds the dealer to be not representative of the product or the product line." Other interconnected factors are also present. Wallis, his son, and other experienced dealers accompany newly associated dealers during the early course of their sales experience. Wallis has a profit-sharing plan provided by the distributor for dealers who help train other dealers. Dealers are not responsible for repossession of the vacuum cleaner when installment contracts fall through. Dealers do not service the equipment, but a service technician in Wallis' office does. The distributor's business is limited to selling and servicing.

In *Read,* the court said the right to control, not the actual

exercise of the right, determines whether there is control. Here the distributor has the right to control the dealers, but has not exercised that right. Wallis and the salesmen are both engaged in a setvice within the usual course of the business for which the service is performed, the sale of Kirby vacuum cleaners. In addition, all the services of selling are not performed outside Wallis' place of business. Therefore, their relationship under the common law and the statutes is that of employer-employee and not that of independent contractor.

Here the district court incorrectly determined the question of law based on the adopted findings of fact. Both the hearing officer and the Secretary had correctly determined from the facts the salesmen were employees of Wallis. The trial court is reversed and its order abating the taxes collected is set aside.