510

No. 36,550

BESSIE LEE MARTIN, *Plaintiff*, v. THE WICHITA CAB COMPANY, *Appellee*, LYNN R. BRODRICK, Collector of Internal Revenue, *Appellant*.

(170 P. 2d 147)

Opinion filed June 8, 1946.

*Maurice P. Wolk,* special assistant attorney general, argued the cause, and *Samuel O. Clark, Jr.,* assistant attorney general, *Sewall Key,* special assistant attorney general, *Randolph Carpenter,* United States attorney, and *Eugene W. Davis,* assistant United States attorney, were on the briefs for the appellant.

*I. H. Stearns,* of Wichita, argued the cause, and *H. C. Castor* and *E. P. Villepigue,* both of Wichita, were on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: In an action instituted for that purpose a receiver was appointed for the Wichita Cab Company who was ordered to manage, control and operate the company. Creditors were ordered to file their claims, and the collector of internal revenue filed claims for federal taxes assessed against the company and its receiver. The receiver filed written objections to the allowance of the claims and a hearing having been had, the trial court sustained the objections and disallowed the claims. The collector appeals.

In a preliminary way it may be said the issue arises by reason of the relation between the company and the drivers of its cabs, the general question being whether the relation between them was

that of employer and employee, bailor and bailee, independent contractor, or some other relation.

The collector filed his claims which set out stated amounts for specified periods in the years 1940 to 1944, both inclusive, of federal social security, victory and withholding taxes asserted under federal statutes against the company and its receiver, in an aggregate sum of $46,412.01. Without recitation of detail, the total of these claims was later asserted to be $43,696.13, and a later claim was made for further taxes asserted to have become due subsequent to the commencement of the action in the additional sum of $3,715.88.

The receiver filed lengthy objections to the allowance of the claims, included in which are allegations that the agreements between the receiver and the drivers and owners of cabs and the prior agreements between the company and the drivers and owners of cabs created the relationship of hiring, bailment or other similar relationship, and that neither the receiver nor the cab company was ever an employer within the meaning of the federal tax statutes, and that there never was or became anything due from the receiver or the cab company to any person as wages or otherwise, and that no wages or salaries were ever due or paid by the receiver or the company to any of the drivers. If necessary further objections will be referred to later.

At the trial on the claims the collector made a prima facie case by offering certified copies of the assessment lists covering the taxes for which the claims were filed. Insofar as the relationship between the company and its drivers was concerned there was no evidence of any written agreements between the company, or its receiver, and the drivers of cabs. The evidence of the receiver showed that the company was formed in 1940, and that it followed the same practice as to drivers as was used by the old Wichita Cab Company before the present company; that the company did not pay cab drivers any sum as salary or wages; that the company owned thirty-four or thirty-five cabs and operated sixteen privately owned cabs; that there were night and day shifts; that the driver of a company-owned cab paid $5.50 per day rental on the day shift and $7 per day on the night shift; that on privately owned cabs the owner, if he drove himself, paid $4 per day and if another driver had the cab he paid $3. Drivers were not compelled to wear uniforms and did not belong to any union. All cabs were painted black and white and bore a distinctive insignia composed of a circular

design, with the words "Wichita Cab" around the circle and the word "dial" in the center with the telephone number of the company. The name of the owner of a privately owned cab did not appear on the cab. Each cab also bore a number. All cabs were licensed by the city of Wichita and licenses were issued in the name of the company on its cabs and in the names of the owners of the privately owned cabs. The company had a garage and office in the same building. It had a switchboard and call boxes at various locations and a stand at the Union Bus Depot. The company advertised at its own expense. It employed four switchboard operators, who acted as dispatchers, two starters, three mechanics, a grease man and three office workers. The salaries of these individuals were paid by the company (taxes on these employees are not here involved). In the case of company-owned cabs the company paid for upkeep and tires, and all drivers paid for their own gasoline. All drivers of both classes of cabs received the same benefits from advertising, use of call boxes and loading stations. For some time the cab company had operated on a zone system of rates, but at the time of the trial, the system was a mileage system. Rates were set by the city of Wichita. Complaints for overcharge were made to the company, which adjusted them as best it could, the driver was talked to and admonished about overcharges but no driver was discharged for overcharging. Meetings of drivers were held and each driver was given a printed notice that before he took a cab he must see that his gas tank was full and he would be required to pay for a refill when he checked in, and that he must check his head and tail lights; that he must see that he had accident report card and pencil and must report every accident regardless of the amount of damage; that any driver getting a speeding ticket would be discharged at once; that he must call in twice an hour; that he must check his load before leaving depot so that passengers might be unloaded in route as nearly as possible, and that courteous treatment was required in all circumstances. The company could refuse to permit a driver to operate a cab at any time. It may be further noted that there was some testimony with respect to income tax returns made by drivers individually, and it was agreed the deputy collector would furnish a statement to be prepared by him. We note from that statement that during 1943 the total number of drivers of cabs was 170 and during 1944 it was 234.

The taxes mentioned in the claims filed by the collector were im-

posed under section 1400, 1410 and 1600 of the Internal Revenue Code, as amended. (26 U. S. C., 1940 ed., §§ 1400, 1410 and 1600.) These several sections, and pertinent portions of the acts of which they are part, provide for taxes on employers and employees with respect to employment, and while the language of the various acts differs somewhat, it is conceded that if the relationship of employer and employee did not exist, then no tax could be lawfully asserted, and, under the circumstances of this case, the claims of the collector were properly disallowed. We shall not make any detailed analysis of the sections mentioned.

As has been stated, the trial court disallowed the claims of the collector. No findings of fact were made, and under such circumstance, it must be held that any conflict arising from the testimony, and the weight to be given varying inferences from the testimony, were resolved in favor of the receiver; and further, that it is inherent in the trial court's ruling that the relationship of employer and employee was found not to exist.

Although not so specifically stated in his brief, the effect of appellant's argument is that the evidence warranted only a finding that the relationship of employer and employee existed, and a finding to the contrary was against the evidence and erroneous as a matter of law.

Appellant directs our attention to portions of the regulations promulgated by the commissioner of internal revenue, and quotes from section 402.204 of Treasury Regulation 106 promulgated under the Federal Insurance Contributions Act and from section 403.204 of Treasury Regulations 107 promulgated under the Federal Employment Tax Act, defining employment as follows:

"Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to *what* shall be done but *how* it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods

for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Whether the relationship of employer and employee exists will in doubtful cases be determined upon an examination of the particular facts of each case."

The above regulation is quoted in some of the cases later mentioned.

Appellant contends that the facts in the instant case, when measured by the above regulations are sufficient to establish the relationship of employer and employee between the Wichita Cab Company or its receiver on one side and the drivers of the cabs on the other, and he contends that on facts not materially distinguishable cab drivers have been held to be employees for social security tax purposes in a number of cases, among them being *Jones v. Goodson,* 121 F. 2d 176; *Kaus v. Huston,* 35 F. Supp. 327, affirmed 120 F. 2d 183. Our attention is also directed to our decision in *Richmond v. Clinton,* 144 Kan. 328, 58 P. 2d 1116. This last case is not helpful. It was an action against the Wichita Cab Company and one of its drivers for damages for negligence. The company sought to avoid liability on the ground it did not own the cab. After reviewing some of the evidence this court denied the company's claim of nonliability, saying, in part, that to permit the company to evade liability for injuries under the circumstances would be an easy way to circumvent police regulations.

Appellant places most of its reliance on *Jones v. Goodson,* supra, where a rather extended statement of the conditions of operations between a cab company and its drivers is set forth, but will not here be repeated. A comparison of facts will show that there, but not here, the drivers paid a specified charge for a maximum mileage for company-owned cars and a fixed sum for additional mileage, and that the company had a right to operate the cabs on a percentage basis. After quoting the above regulation the court considered the general question of the relationship of master and servant and that of independent contractor, and after applying stated tests as to right to control and direct the work on the one hand as determining a master and servant relationship, and as to one who engages to perform a service for another according to his own methods and manner as determining an independent contractor relationship, concluded that the facts disclosed the relationship of master and servant, and that a tax followed.

Appellee relies principally on the two following decisions, both arising from the same action. In *Yellow Cab Co. v. Magruder,* 49 F. Supp. 605, a review was made of the statutes and regulations, it being said that it was obvious the tax was not payable unless there was an employer and employee and the relationship of employment between them, and that wages were paid by the employer to the employee. Reference is made to the considerable review of the law with reference to the law of master and servant, independent contractor, bailor and bailee, and will not be repeated here. Attention is directed to the distinction which the court makes of *Jones v. Goodson,* supra, and to *Kaus v. Huston,* supra. With reference to the last-mentioned case which was one for injunction the court concluded that what was said therein about the relationship was, in its opinion, unnecessary to decide, as the trial court in that case was without jurisdiction to enjoin collection of taxes by reason of a certain stated statute. The court, as a result of its consideration of the facts and law, concluded that the relationship of employer and employee did not exist; that the rentals paid did not constitute wages, and there was no liability for the tax asserted.

Magruder appealed from the judgment in the above case and the matter was disposed of in *Magruder v. Yellow Cab Co. of D. C.,* 141 F. 2d 324, 152 A. L. R. 516, where the judgment of the trial court was affirmed. Reference is made to the opinion for reasons assigned for the judgment. It is interesting to note that it was held that the fact the company by its method of doing its business and its advertising might be estopped from denying liability to the public for negligent operation of its cabs, did not necessarily establish the existence of an employer-employee relationship between the company and the drivers, and further that where drivers leased cabs at stipulated rentals, the fares collected by the drivers for which they were not required to account to the company did not constitute wages paid by the company subject to the federal insurance contribution tax. And see, also, Annotation 152 A. L. R. 520 on what amounts to vendor-vendee or lessor-lessee relationship, as distinguished from employment or service relation, within social security or unemployment compensation acts.

On the argument of this appeal our attention was directed to *United States v. Davis,* 154 F. 2d 314, the opinion in which had not then been printed in the advance sheets. A reference to that opinion discloses that while there are many facts in it distinguishable from

those now before us, on the question of the right of control by the owner of a cab over the driver, the facts are quite similar. The trial court had found the owner had no power to control and direct the driver, and had rendered judgment in favor of the owner to recover taxes collected under the Federal Insurance Contributions Act, heretofore cited. On appeal the Court of Appeals reviewed the Magruder and Jones cases heretofore referred to, as well as other cases, and affirmed the trial court's judgment, the headnote of the opinion reading as follows:

"Where driver rented taxicab from day to day and operated it at his own expense and as he saw fit, driver was not an 'employee' of the owner of the taxicab within the Federal Insurance Contributions Act. Federal Insurance Contributions Act, 26 U. S. C. A., Int. Rev. Code, § 1406."

Other cases are cited in the briefs of both parties but they present nothing essentially different from those mentioned above.

The question whether a relationship existing was that of master and servant, or independent contractor, has been before this court on numerous occasions. In *Brownrigg v. Allvine Dairy Co.*, 137 Kan. 209, 19 P. 2d 474, it was held:

"Where a dairy company sells milk at wholesale to persons owning their own trucks on which they are permitted to paint the name of the dairy company, its telephone number and its milk permit number, and the dairy company retains no control over such persons, does not direct them where to take the milk and fixes no route or district, but such persons are free to go where they will and to sell the milk to whom they please, the relation between the dairy company and the truck driver is that of contractor and contractee and not that of master and servant, and in the event of injury caused by the negligence of the truck driver in operation of his truck, the dairy company is not liable." (Syl.)

Under this case, it would appear the fact all the cabs bore the name "Wichita Cab" was not decisive of the relationship.

In *Houdek v. Gloyd*, 152 Kan. 789, 107 P. 2d 751, the question was the relationship between two defendants charged with liability for injuries. Reference is made to that opinion for an extended statement of facts, and where a number of our cases are reviewed. There may be found definitions of the relationships. In that case it was held that in determining whether the alleged master exercised control, all of the circumstances surrounding the contract were to be considered, and the fact the alleged employer had reserved right of termination or cancellation of the contract was a proper element to be shown. See, also, *Sims v. Dietrich*, 155 Kan. 310, 124 P. 2d

507, where *Houdek v. Gloyd* was followed, and where the relationships are defined.

Although many cases may be found holding that a master is a principal who employs another to perform service for him, and who controls or has the right to control the physical conduct of the other in the performance of such service, and the servant is the person so employed, those cases must be considered in view of the facts. Also, it must be borne in mind that certain contract rights may exist in connection with a bailment, the general rule being that the rights, duties and liabilities of the parties depend largely on the contract. See 6 Am. Jur. 310, 8 C. J. S. 255 *et seq.*

It seems rather clear from the evidence that the cab company maintained a service for transportation, and that to increase its value and the return from its business it had employees to keep its cabs in condition, and to take and transmit calls of prospective passengers for cabs. The tax on these employees is not involved. To make its business more desirable to the public, and more valuable to itself, it had its cabs painted alike, bearing its telephone number, and it advertised its business. Of course, all the above would have been futile if it had no drivers for its cabs. It did not hire drivers who were paid a stipulated wage, by the hour, the day or the month, nor did it hire any driver whose pay was a percentage of the fare collected. The company elected to rent or lease its cabs at prices heretofore mentioned, and its income was derived from the rentals paid by the drivers. The service used for its own cars was valuable to others and private owners painted their cars in the company design, and paid a so-called rental to obtain the service furnished. None of these drivers was under any obligation to account to the cab company for any fares collected, and the company was not concerned with whether the driver succeeded in collecting more or less than the stipulated rental—if the fares did not meet the rental, the driver still owed, and if the fares exceeded the rental, the excess belonged to the driver. Not even the collector contends there was any actual payment of anything by the company to the cab drivers, his contention is rather that under the several statutes wages are defined as all remuneration for employment, including the cash value of all remuneration paid in any medium other than cash (26 U. S. C., 1940 ed., §§ 1426, 1621), and that the relationship of master and servant having been established, the fares received by the driver, even though not paid him by the cab company, constitute

wages. The definition of wages assumes that a relation of master and servant exists. The collector insists that the cab company had a right of control. In our opinion the fact that the company put conditions on the use of its cars and service was just as consistent with a contract of bailment as with a master and servant relationship. There is no evidence that the company directed the drivers in the performance of their work. True, the company maintained its switchboard and call boxes which the drivers used to determine where passengers might be found, but that was a part and parcel of the agreement under which the rental was paid for the cab. If there were any doubt as to the relationship, it should be resolved in favor of the taxpayer and against the taxing authority, but in our opinion, as a matter of law the evidence did not disclose a relation of master and servant, but one of contractor and contractee akin to a bailment, and the trial court did not err in its judgment.

In view of our conclusion it is unnecessary to discuss other matters mentioned in the briefs dealing with arbitrary assessments and administrative difficulties.

The judgment of the trial court is affirmed.