(210 P.3d 647)
No. 99,726

TED HILL, INDIVIDUALLY, and OT CAB, INC., *Appellants,* v. KANSAS DEPARTMENT OF LABOR, DIVISION OF WORKERS COMPENSATION, *Appellee.*

Opinion filed June 26, 2009.

*Stephen M. Kerwick* and *Gary L. Ayers*, of Foulston Siefkin, LLP, of Wichita, for appellants.

*Darren E. Root* and *A.J. Kotich*, of Kansas Department of Labor, of Topeka, for appellee.

Before CAPLINGER, P.J., BUSER, J., and BUKATY, S.J.

CAPLINGER, J.: The Workers Compensation Division (Division) of the Kansas Department of Labor (KDOL) found OT Cab, Inc. and its owner, Ted Hill (collectively, petitioners) knowingly and intentionally failed to maintain workers compensation insurance for OT Cab's drivers in violation of K.S.A. 2008 Supp. 44-532(b), and found petitioners jointly and individually liable for a $10,000 civil penalty pursuant to K.S.A. 2008 Supp. 44-532(d). In subsequent appeals, the Secretary of the Department of Labor and the district court affirmed the Division's final order. Petitioners appeal, alleging the district court erroneously (1) determined OT Cab's drivers were employees rather than independent contractors; (2) interpreted K.S.A. 2008 Supp. 44-532(d) to require imposition of a fine whenever a violation of K.S.A. 2008 Supp. 44-532(b) is found; and (3) concluded OT Cab, Inc. and its owner, Ted Hill, were jointly and individually liable for the civil penalty.

We affirm the district court's determination that the cab drivers were employees of OT Cab rather than independent contractors under the "right to control" test. Further, we hold that because OT Cab knowingly and intentionally failed to procure workers compensation insurance for its employees as required by K.S.A. 2008 Supp. 44-532(b), the Division was required to impose a mandatory civil penalty pursuant to K.S.A. 2008 Supp. 44-532(d) in the amount specified in the statute.

Finally, we find the district court erred in disregarding OT Cab's corporate entity based upon the company's failure to maintain workers compensation insurance in violation of K.S.A. 2008 Supp. 44-532(b). Violations of the Kansas Workers Compensation Act (KWCA) are remedied by the imposition of civil and/or criminal penalties provided by K.S.A. 2008 Supp. 44-532(c) and (d) and need not be remedied by application of the "interests of justice" theory for piercing the corporate veil. Thus, we reverse and remand this case to the Division for imposition of a civil penalty against OT Cab in the amount of $25,000 pursuant to K.S.A. 2008 Supp. 44-532(d).

*Factual and procedural history*

When Ted Hill purchased OT Cab in April 2004, the company employed·a full-time manager, a dispatcher, full-time drivers, and part-time drivers. Due to decreasing profits, Hill terminated· the employment of the dispatcher and part-time drivers. However, he retained the manager on a part-time basis and also retained two full-time drivers under service agreements purportedly changing the drivers' status to that of independent contractors as of January 1, 2005.

Historically, OT Cab had provided workers compensation insurance to its employees and it had a valid policy in effect from July 9, 2004, through June 20, 2005. Hill cancelled the policy effective January 1, 2005, based on his belief that OT Cab was not required to provide coverage for the drivers, who were independent contractors.

On June 1, 2005, an anonymous caller informed the Division that OT Cab did not have workers compensation insurance and that the owner claimed its employees were independent contractors. After investigation, the Division sent petitioners a statement of charges alleging petitioners knowingly and intentionally failed to maintain workers compensation insurance in violation of K.S.A. 2008 Supp. 44-532. The Division also suggested assessment of a $25,000 civil penalty.

OT Cab reinstated its workers compensation insurance policy as of November 17, 2005, after the KDOL's Employment Security Division determined in an unrelated matter that OT Cab's drivers were employees rather than independent contractors. According to Hill, the annual premium for the new policy was $3,400.

Following an evidentiary hearing, the administrative hearing officer (AHO) issued a comprehensive initial order containing several key fact findings. Citing OT Cab's ownership and maintenance of the cabs, its requirement that drivers keep records and receipts, and its retention of the right to hire and fire drivers, the AHO found that OT Cab's drivers were employees rather than independent contractors. Further, the AHO concluded Hill knowingly and intentionally failed to maintain insurance in violation of K.S.A. 2008 Supp. 44-532(b).

After considering unspecified mitigating factors, the AHO imposed a $10,000 civil penalty pursuant to K.S.A. 2008 Supp. 44-532(d) and found Hill and OT Cab jointly and individually liable for the penalty.

Petitioners jointly sought review with the Secretary of the KDOL, who summarily affirmed the AHO's findings and conclusions except for its imposition of a $10,000 civil penalty. The Secretary ruled that when the Division exercises its discretionary authority and imposes a civil penalty in an amount other than the $25,000 penalty provided by K.S.A. 2008 Supp. 44-532(d), the Division is required to articulate the reasons for the amount imposed. Because the AHO failed to do so, the Secretary remanded the order with directions to determine whether to assess a civil penalty, and if so, the amount of the penalty. If the amount of the penalty was other than the amount provided under the plain meaning of the statute, the AHO was to provide "a clear articulation as to the reasons" for the specific amount chosen.

On remand, the AHO articulated the reasons for imposition of a $10,000 civil penalty and again imposed that amount jointly and individually against the petitioners. The Secretary denied petitioners' subsequent request for review and ruled that the AHO's initial order and supplemental order would constitute the Division's final order. Petitioners jointly petitioned for judicial review in district court.

In its memorandum decision and order affirming the Division's final order, the district court restated the AHO's factual findings and determined OT Cab's drivers were employees rather than independent contractors. Further, the court determined the AHO did not abuse his discretion or act unreasonably, arbitrarily, or capriciously in assessing a $10,000 civil penalty jointly and individually against Hill and OT Cab.

Petitioners appeal, asserting the district court erred in (1) determining that the cab drivers were employees of OT Cab rather than independent contractors; (2) avoiding the issue of whether K.S.A. 2008 Supp. 44-532(d) requires imposition of a fine whenever a violation of K.S.A. 2008 Supp. 44-532(b) is found; and (3) affirming the Division's imposition of joint and individual liability

upon OT Cab and Hill absent a finding of fraudulent activity or the use of the corporate entity as a facade.

*Discussion*

Before considering the specific issues raised by the petitioners, it is helpful to review the statutory basis for the imposition of workers compensation insurance. With some exceptions not relevant here, the KWCA applies to all employers that employ employees and have an annual payroll exceeding $20,000. K.S.A. 44-505. Employers subject to the KWCA are required to maintain workers compensation insurance. K.S.A. 2008 Supp. 44-532(b). When the director of the Division has reason to believe that an employer subject to the KWCA has knowingly and intentionally failed to maintain workers compensation insurance as required, the director issues a statement of charges to the employer and conducts a hearing in accordance with the Kansas Administrative Procedure Act (KAPA), K.S.A. 77-501 *et seq.* An employer found in violation of K.S.A. 2008 Supp. 44-532(b) is subject to criminal and civil penalties. K.S.A. 2008 Supp. 44-532(c), (d).

The employer may seek review by the KDOL's Secretary of the Division's initial order. K.S.A. 2008 Supp. 75-5708; K.S.A. 2008 Supp. 77-527. Additionally, any civil penalty imposed or final action taken by the Division is subject to judicial review in the district court of Shawnee County. The judicial review of the Division's final action or imposition of a civil penalty is governed by the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.* K.S.A. 2008 Supp. 44-532(f); *Ninemire v. Kansas Dept. of SRS*, 284 Kan. 582, 585, 162 P.3d 22 (2007). The district court may grant relief from the Division's action if, *inter alia*, it determines the Division has erroneously interpreted or applied the law; the action is not supported by substantial evidence; or the action is otherwise unreasonable, arbitrary, or capricious. K.S.A. 77-621(c)(4), (7), (8).

In reviewing a district court's decision reviewing an agency action, this court must first determine whether the district court followed the requirements and restrictions placed upon it and then make the same review of the administrative agency's action as did

the district court. *Jones v. Kansas State University*, 279 Kan. 128, 139, 106 P.3d 10 (2005). The party asserting the agency's action is invalid bears the burden of proving the invalidity and must overcome a rebuttable presumption of validity that attaches to the administrative agency's action. K.S.A. 77-621(a)(1); *Jones*, 279 Kan. at 139-40.

*Were the Cab Drivers Employees or Independent Contractors?*

Petitioners first assert the district court erred as a matter of law by applying an incorrect legal standard to determine that OT Cab's drivers were employees rather than independent contractors. Specifically, petitioners suggest the court failed to apply "the most recent and controlling Kansas case law" as expressed in *Travelers Indemnity Co. of Ill. v. Challenger Fence Co.*, 34 Kan. App. 2d 276, 119 P.3d 666 (2005).

As discussed below, we believe the district court correctly stated the "right to control" test in determining the drivers were employees rather than independent contractors. We view petitioners' argument as a challenge to the district court's application of the controlling law to the facts in this case. Thus, before considering the specific facts relevant to the court's analysis here, we will first discuss the development and application of the right to control test.

## A. The Right to Control Test

Under the KWCA, an employee is defined, in part, as "any person who has entered into the employment of or works under any contract of service or apprenticeship with an employer," but that definition does not include self-employed persons. K.S.A. 2008 Supp. 44-508(b). Although not defined in the KWCA, our courts have consistently defined an independent contractor as one who, in exercising an independent employment, contracts to do certain work according to his or her own methods, without being subject to the control of his or her employer, except as to the results or product of his or her work. *Falls v. Scott*, 249 Kan. 54, 64, 815 P.2d 1104 (1991); *Krug v. Sutton*, 189 Kan. 96, 98, 366 P.2d 798 (1961).

The parameters of the "right to control" test were discussed in *Falls v. Scott*, 249 Kan. at 64:

"whether the employer has the right of control and supervision over the work of the alleged employee, and the right to direct the manner in which the work is to be performed, as well as the result which is to be accomplished. It is not the actual interference or exercise of the control by the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor."

Further, our Supreme Court has consistently reiterated that no absolute rule may be applied to determine whether an individual is an employee or an independent contractor. Rather, each case must be determined based on its own particular facts. *Hartford Underwriters Ins. Co. v. Kansas Dept. of Human Resources*, 272 Kan. 265, 270, 32 P.3d 1146 (2001); *Schroeder v. American Nat'l Bank*, 154 Kan. 721, 724, 121 P.2d 186 (1942). In doing so, we primarily apply the "right to control test," but generally consider several additional factors, including:

"1) [t]he existence of the right of the employer to require compliance with instructions;
"2) the extent of any training provided by the employer;
"3) the degree of integration of the worker's services into the business of the employer;
"4) the requirement that the services be provided personally by the worker;
"5) the existence of hiring, supervision, and paying of assistants by the workers;
"6) the existence of a continuing relationship between the worker and the employer;
"7) the degree of establishment of set work hours;
"8) the requirement of full-time work;
"9) the degree of performance of work on the employer's premises;
"10) the degree to which the employer sets the order and sequence of work;
"11) the necessity of oral or written reports;
"12) whether payment is by the hour, day or job;
"13) the extent to which the employer pays business or travel expenses of the worker;
"14) the degree to which the employer furnishes tools, equipment, and material;
"15) the incurrence of significant investment by the worker;
"16) the ability of the worker to incur a profit or loss;
"17) whether the worker can work for more than one firm at a time;
"18) whether the services of the worker are made available to the general public;
"19) whether the employer has the right to discharge the worker; and

"20) whether the employer has the right to terminate the worker." *Crawford*, 17 Kan. App. 2d at 710; see *Hartford*, 272 Kan. at 271.

Courts have also considered the factors set out in the Restatement (Second) of Agency § 220(2) (1957):

" '(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
" '(b) whether or not the one employed is engaged in a distinct occupation or business;
" '(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
" '(d) the skill required in the particular occupation;
" '(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
" '(f) the length of time for which the person is employed;
" '(g) the method of payment, whether by the time or by the job;
" '(h) whether or not the work is a part of the regular business of the employer;
" '(i) whether or not the parties believe they are creating the relation of master and servant; and
" '(j) whether the principal is or is not in business.' " *Knorp v. Albert*, 29 Kan. App. 2d 509, 514, 28 P.3d 1024, *rev. denied* 272 Kan. 1418 (2001) (quoting Restatement [Second] of Agency § 220[2]).

Obviously, there are numerous factors which may be considered in determining an individual's employment status, and many of those factors overlap. The courts' consideration of so many factors, however, accentuates the overriding principle that each case must stand on its own facts. See, *e.g.*, *Knorp*, 29 Kan. App. 2d at 512 (generally, the question of whether one is an employee or an independent contractor is a question of fact).

Nevertheless, petitioners here suggest that this court's opinion in *Travelers Indemnity Co. of Ill. v. Challenger Fence Co.*, 34 Kan. App. 2d 276, required the district court to focus solely on OT Cab's "right of physical control" over its drivers' work performance. Petitioners broadly maintain that the district court failed to do so, and instead simply adopted the Division's emphasis on "a number of monumentally irrelevant contract issues with the drivers and outward trappings of business."

In *Travelers*, a panel of this court considered whether several individuals were employees of Challenger Fence Company, or

were independent contractors not covered by the company's workers compensation insurance policy. The *Travelers* panel reiterated that "the single most important factor" in determining a worker's status as an employee or independent contractor is " 'whether the employer controls, or has the right to control, the manner and methods of the worker in doing the particular task.' " 34 Kan. App. 2d at 279. However, the panel further noted that other factors should be considered, including those set forth in the Restatement (Second) of Agency § 220(2). 34 Kan. App. 2d at 279 (citing *McCubbin v. Walker*, 256 Kan. 276, 281, 886 P.2d 790 [1994]).

Ultimately, the *Travelers* panel concluded the workers were independent contractors, citing several factors: Challenger did not monitor or set the workers' daily hours; Challenger did not pay taxes, unemployment insurance, disability insurance, or provide other benefits to the workers; Challenger did not provide the workers with tools, company vehicles, or other company workers to assist them; Challenger did not pay the workers regular wages; and Challenger retained the workers "to do piece work as needed and solicited bids from them for the work." 34 Kan. App. 2d at 279.

We see nothing in the manner in which the right to control test was applied in *Travelers* that altered or modified the manner in which the test is to be applied. Thus, we reject petitioners' suggestion that the district court erred here by not focusing solely on OT Cab's right to *physically* control the drivers' work.

B. OT Cab's Drivers Were Employees Rather than Independent Contractors

Next, we must consider whether the district court correctly applied the law to the facts of this case.

The district court relied upon the testimony of OT Cab's manager and the language of the service agreement itself to support its factual conclusions, including: (1) none of the drivers held themselves out as being in business for themselves; (2) calls for cab rides came in to OT Cab rather than the individual drivers; (3) the cabs' signage identified OT Cab as the operator of the cabs; (4) drivers were required to maintain and submit records of all cab rides to OT; (5) drivers were required to turn in all fares collected to OT

Cab; (6) drivers maintained a log for OT Cab of all incoming calls for rides and dispatches to other drivers; (7) OT Cab paid the drivers 25% of the total fares collected; (8) OT Cab established out-of-town mileage rates; and (9) OT Cab owned the cabs, paid insurance on the cabs, secured licensing from the city to operate the cabs, and paid for all cab repairs.

The court then applied the right to control test and several of the additional factors cited in *Travelers* and *Knorp* to conclude OT Cab had the right to direct the manner and method of the drivers' work and the drivers remained employees despite the service agreement characterizing them as independent contractors. See *Hartford*, 272 Kan. at 266, 275 (concluding that contract purporting to acknowledge an individual's status as an independent contractor was not controlling and that "[t]he relationship of contracting parties depends on all the operative facts; the label which they choose to employ is only one of those facts").

While the application of the law to the facts is case driven, we find support for the district court's legal determination here in two cases involving similar facts and issues: *Martin v. Wichita Cab Co.*, 161 Kan. 510, 170 P.2d 147 (1946), and *Read v. Warkentin, Commissioner*, 185 Kan. 286, 341 P.2d 980 (1959).

In *Martin*, the court considered the relationship between Wichita Cab Company and its drivers in the context of claims by the Internal Revenue Service for federal social security, victory and withholding taxes. The court applied the "right to control" test and considered additional factors, but noted that determination of the issue was necessarily fact driven. 161 Kan. at 513-17.

The *Martin* court concluded that no employee-employer relationship existed and, in doing so, relied on several factors: (1) the company owned the cabs but leased them to the drivers for set rental fees; (2) the company did not pay the drivers wages, nor did it compensate them based on collected fares; rather, it earned its profits through the rental fees charged to the driver; and (3) the drivers were not required to account for fares collected. 161 Kan. at 517-18.

Thirteen years later, in *Read v. Warkentin, Commissioner*, 185 Kan. 286, the court again considered whether an employee-em-

ployer relationship existed between a cab company and its drivers in the context of an action by the State Labor Commissioner, which found the owner and operator of Yellow Cab to be a liable employer under the Kansas Employer Security law. Applying the "right to control" test and general agency principles on master-servant relationships and independent contractors, the *Read* court agreed with the agency's determination that Yellow Cab's drivers were employees rather independent contractors. 185 Kan. 286, Syl. ¶ 3.

The court in *Read* relied upon several factors, including: Yellow Cab owned the cabs, maintained an office, and employed three dispatchers; Yellow Cab had 10 drivers who each signed a "Rental Agreement" which required the company to furnish the cabs and pay all maintenance and operation expenses in return for 60% of the total fares collected by the drivers; Yellow Cab required drivers to dress properly and be clean shaven, keep cabs subject to call or pay an extra charge, purchase gas and services at stations designated by Yellow Cab at the company's expense, and maintain waybills which were cross-checked with dispatcher call logs. 185 Kan. at 287-88, 293.

Significantly, the court in *Read* relied upon the drivers' receipt of commissions—*i.e.*, a percentage of their fares—and noted that commissions were included within the statutory definition of wages in K.S.A. 44-703. The court also found it significant that the cab company had the right to control the daily operations of the drivers and often exercised that right. 185 Kan. at 287-88, 293. Further, the court acknowledged the opposite result reached in *Martin* but found the facts in *Martin* to be "clearly distinguishable." 185 Kan. at 293-94.

While this case includes facts common to both *Read* and *Martin*, we find it more analogous to the facts in *Read*, where the cab company owned and maintained the cabs, directed the details of the drivers' daily operations of the cabs, and paid the drivers a percentage of the total fares collected. See *Read*, 185 Kan. at 287-88. The facts here are less analogous to those in *Martin*, where the cab company owned and maintained the cabs but leased the cabs

to the drivers for a set rental fee, and allowed the drivers to keep all of fares collected. See *Martin*, 161 Kan. at 511-12, 517-18.

To summarize, we conclude the district court appropriately applied the right to control test to the facts of this case, and we affirm the district court's conclusion that OT Cab's drivers were employees rather than independent contractors.

*Does K.S.A. 2008 Supp. 44-532(d) Require Imposition of a Fine When a Violation of K.S.A. 2008 Supp. 44-532(b) is Found?*

Petitioners next maintain that even if they were required to provide workers compensation insurance because the drivers were employees, the Division erroneously interpreted K.S.A. 2008 Supp. 44-532(d) to require imposition of a civil penalty in all cases in which a violation of K.S.A. 2008 Supp. 44-532(b) is found. Petitioners suggest that even when the Division finds a "knowing and intentional failure to secure the payment of workers compensation," as it did here, the Division nevertheless has the discretion to impose no penalty upon the employer. Petitioners claim the district court "avoided" ruling on this issue, and in doing so, "effectively rewrote the statute."

The Division does not directly address the petitioners' argument. Instead, it argues substantial competent evidence supports the Division's determination that petitioners knowingly and intentionally violated the statute—a point petitioners do not advance on appeal. Further, the Division contends the $10,000 civil penalty imposed here was not arbitrary, capricious, or unreasonable and was supported by substantial competent evidence—again, a point not argued by petitioners.

Interpretation of a statute is generally a question of law subject to unlimited review. *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, 1031, 181 P.3d 549 (2008). However, special rules apply when we review an administrative agency's interpretation of a statute. *Coma Corporation v. Kansas Dept. of Labor*, 283 Kan. 625, 629, 154 P.3d 1080 (2007).

"The doctrine of operative construction of statutes provides that the interpretation of a statute by an administrative agency charged with the responsibility of enforcing the statute is entitled to judicial deference. If there is a rational basis

for the agency's interpretation, it should be upheld on judicial review. If, however, the reviewing court finds that the administrative agency's interpretation is erroneous as a matter of law, the court should take corrective steps. The determination of an administrative agency as to questions of law is not conclusive and, while persuasive, is not binding on the courts. [Citation omitted.]" *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 70, 150 P.3d 892 (2007).

As noted, employers subject to the KWCA must maintain workers compensation insurance, K.S.A. 2008 Supp. 44-532(b), and an employer's knowing and intentional failure to maintain that insurance is a class A misdemeanor. K.S.A. 2008 Supp. 44-532(c). Section (d) of the statute provides for imposition of a civil penalty: ·

"In addition, whenever the director has reason to believe that any employer has engaged or is engaging in the knowing and intentional failure to secure the payment of workers compensation to the employer's employees as required in [K.S.A. 2008 Supp. 44-532(b)], the director shall issue and serve upon such employer a statement of the charges with respect thereto and shall conduct a hearing in accordance with the Kansas administrative procedure act, wherein the employer may be liable to the state for a civil penalty in an amount equal to twice the annual premium the employer would have paid had such employer been insured or $25,000, whichever amount is greater." K.S.A. 2008 Supp. 44-532(d).

To understand the exact nature of petitioners' argument regarding interpretation of the statute, we must first explain the rather confusing rulings regarding this issue below.

A. The Rulings Below

In his initial order, the AHO found that petitioners knowingly and intentionally failed to maintain workers compensation in violation of K.S.A. 2008 Supp. 44-532(b) and (c), and imposed a $10,000 civil penalty jointly and individually against the petitioners. On review, the Secretary noted that a plain reading of that statute requires imposition of a penalty in the amount of twice the annual premium or $25,000, whichever is greater. Nevertheless, the Secretary adopted the Division's interpretation of the statute which permits the Division to "impose civil penalties ranging from $0 to $25,000 on a case by case basis" so long as the reasons for the imposition of a discretionary amount are articulated. Thus, the Secretary remanded the matter to the AHO to determine "*whether* a

civil penalty is to be assessed in this matter, *and if so* in what amount." (Emphasis added.)

On remand, the AHO did not specifically determine whether a civil penalty should be assessed. Rather, the AHO simply stated that the civil penalty assessed for failure to secure workers compensation insurance "may be less than $25,000 provided by K.S.A. 2008 Supp. 44-532(d) based on the discretionary authority of the agency."

Reasoning that the mandatory statutory penalty of $25,000 was disproportionate to the harm done in this case, the AHO articulated several reasons supporting his discretionary imposition of a $10,000 penalty, including: (1) none of the cab drivers were injured during the period of noncompliance; (2) OT Cab procured insurance in November 2005, upon notification from the Employment Division that the drivers would not be considered independent contractors; and (3) OT Cab had previously maintained insurance until the time it believed insurance was no longer required.

Finally, the AHO stated, "The *lowest penalty* allowed by K.S.A. 44-532(d) is twice the employer's annual premium for workers compensation insurance, or in this case, $6,800."

Thus, as the Petitioners point out on appeal, the AHO did not follow the Secretary's direction on remand to consider whether "a" civil penalty should be assessed. Rather, the AHO essentially concluded that the Division had discretionary authority to impose a penalty between $6,800 and $25,000 if the reasons for doing so were articulated by the AHO.

On petition for review, the district court concluded the Division "could have been completely justified in imposing a penalty of $25,000." Nevertheless, the court adopted the Division's position permitting assessment of penalties "other than twice the annual premium or $25,000." Finally, the court held the Division's decision to impose a $10,000 penalty was not unreasonable, arbitrary, or capricious in light of the mitigating factors cited by the AHO in support of the Division's discretionary determination. The district court did not comment upon the AHO's determination that discretionary authority did not permit imposition of a fine less than $6,800.

### B. Mandatory Nature of Fine Under K.S.A. 2008 Supp. 44-532(d)

Petitioners now contend that the district court, in affirming the imposition of the $10,000 penalty, overlooked the petitioners' argument in its petition for review that K.S.A. 2008 Supp. 44-532(d) gives the Division discretionary authority to impose no fine at all, as the Secretary seemingly held.

While the district court's opinion is not entirely clear, it appears the court at least recognized the argument now being made by petitioners. The district court specifically noted that petitioners argued in their petition for review that imposition of a civil penalty under K.S.A. 2008 Supp. 44-532(d) was "purely discretionary" and that they "should be assessed either a penalty much lower than $10,000 *or no penalty at all*." (Emphasis added.) The court then approvingly cited the Division's interpretation of the statute to "signify a clear 'either/or approach' to penalty assessment, in which a penalty *must* be assessed and that penalty *must* be either twice the annual premium or $25,000 [whichever is greater]." Nevertheless, the district court then adopted the Division's seemingly inconsistent position that the Division was permitted to "[act] benevolently towards Petitioners" and impose a penalty less than the mandatory fine required by the statute.

On appeal, petitioners reiterate their argument that the phrase "the employer may be liable to the state . . . for a civil penalty" in K.S.A. 2008 Supp. 44-532(d) gives the Division discretionary authority to decline to impose a civil penalty even after a violation of the statute is found.

Our first task when interpreting a statute is to "ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning." *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007).

"When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it. We need not resort to statutory construction. It is only if the statute's language or text is unclear or ambiguous that we move to the next analytical step, applying canons of construction or relying on legislative history construing the

statute to effect the legislature's intent." *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007).

Parsing the plain language of K.S.A. 2008 Supp. 44-532(d), we see that the statute first sets out the condition precedent to taking any action under that statute—*i.e.*, an action must be taken *"whenever* the director has reason to believe that any employer has engaged or is engaging in the knowing and intentional failure to secure the payment of workers compensation to the employer's employees." (Emphasis added.) K.S.A. 2008 Supp. 44-532(d).

The statute then requires the director to issue and serve a statement of charges upon the employer and to "conduct a hearing in accordance with the [KAPA], *wherein the employer may be liable to the state for a civil penalty*." (Emphasis added.) K.S.A. 2008 Supp. 44-532(d).

Petitioners focus on the phrase "may be liable" and suggest the word "may" permits the Division to decline to impose a penalty even when a knowing and intentional violation of the statute has been found following a hearing. However, petitioners ignore the context in which the word "may" appears. Viewed in context, the statute provides: "The director . . . shall conduct a hearing wherein the employer may be liable to the state for a civil penalty *in an amount equal to* twice the annual premium the employer would have paid had such employer been insured or $25,000, whichever amount is greater." K.S.A. 2008 Supp. 44-532(d).

Placed in context, the word "may" clearly refers only to the possibility that the Division may find, based upon the evidence produced at a hearing, that the employer violated K.S.A. 2008 Supp. 44-532(b). In the event a violation is found, however, the statute clearly anticipates imposition of a penalty in the particular amount established in section (d), *i.e.*, twice the annual premium the employer would have paid had the employer been insured, or $25,000, whichever amount is greater.

Thus, we conclude that whenever the Division has reason to believe that an employer has knowingly and intentionally failed to procure workers compensation insurance as required by K.S.A. 2008 Supp. 44-532(d), the Division is required under K.S.A. 2008

Supp. 44-532(d) to (1) issue a statement of charges; (2) conduct a hearing; (3) determine whether a knowing and intentional violation of K.S.A. 2008 Supp. 44-532(b) has been proven; and (4) if a violation is found, impose a civil penalty in the amount of twice the annual premium the employer would have paid had the employer been insured, or $25,000, whichever amount is greater.

Our determination that the Division does not have discretion to decline to impose a civil penalty when a violation of the statute is proven raises a final issue regarding the propriety of the fee imposed here. As stated, petitioners have carefully crafted their appellate argument so as not to challenge the imposition of a discretionary $10,000 penalty in this case. Rather, they challenge only the district court's failure to consider whether *any* fee was required.

While we understand the petitioners' desire to avoid any discussion of the propriety of the Division's exercise of discretionary authority under the statute (since the exercise of that authority ultimately may benefit petitioners here), we decline to artificially limit our review in such a manner. As can be seen from our review of K.S.A. 2008 Supp. 44-532(d), the phrase "may be liable to the State" must be interpreted in light of the proceeding language imposing a civil penalty "in an amount equal to twice the annual premium the employer would have paid had such employer been insured or $25,000, whichever amount is greater."

In interpreting K.S.A. 2008 Supp. 44-532(b), we simply cannot agree with the Division's position that on the one hand, the "plain language" of the statute imposes a mandatory fine in an "either/or" amount, while on the other hand, the Division may impose a discretionary fine ranging anywhere between those "either/or" amounts. In reaching this result, we are mindful of our Supreme Court's direction in *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 521, 154 P.3d 494 (2007):

"When construing statutes, we are required to give effect to the legislative intent if that intent can be ascertained. When a statute is plain and unambiguous, we must give effect to the legislature's intention as expressed, rather than determine what the law should or should not be. [Citation omitted.] A statute should not be read to add that which is not contained in the language of the statute or

to read out what, as a matter of ordinary language, is included in the statute. [Citation omitted.]"

Unquestionably, if we affirmed the imposition of a $10,000 fine here, we would be reading into K.S.A. 2008 Supp. 44-532(d) a discretionary authority which is not contained in the language of the statute. Accordingly, we conclude that when a violation of the statute is found, the Division must impose a civil penalty in an amount equal to twice the annual premium the employer would have paid had such employer been insured or $25,000, whichever amount is greater. Because in this case the annual premium OT Cab would have paid was $3,400, and twice that amount is less than $25,000, we reverse the imposition of the $10,000 penalty and remand to the Division to impose the mandatory $25,000 fine under K.S.A. 2008 Supp. 44-532(d).

*Did the District Court Err in Disregarding the Corporate Entity to Find Petitioners Jointly and Individually Liable?*

Finally, petitioners assert the district court erred in finding Hill and OT Cab jointly and individually liable for the civil penalty. Specifically, petitioners argue that in disregarding the corporate entity, the district court failed to consider the appropriate eight-factor test and mistakenly relied on "some manner of naked 'injustice' test."

The Division contends the decision to "pierce the corporate veil" was not arbitrary, unreasonable, or capricious and was appropriate to prevent injustice or to achieve equity.

Whether substantial competent evidence supports the agency's factual findings and whether the agency correctly applied the law to those facts are both questions of law subject to de novo review. *Martinez*, 32 Kan. App. 2d at 142.

A. Theories Under Which the Corporate Entity May Be Disregarded

As a general rule, stockholders of a corporation are not liable for the debts of the corporation, regardless of whether there are multiple stockholders or only one. However, under certain circumstances the corporate entity may be disregarded and the stock-

holders or individual stockholder held liable for the debts of the corporation. The decision to disregard the corporate entity "is to be exercised reluctantly and cautiously." *Amoco Chemicals Corporation v. Bach*, 222 Kan. 589, 593, 567 P.2d 1337 (1977). Each case involving disregard of a corporate entity must be determined on the particular facts presented. *Sampson v. Hunt*, 233 Kan. 572, 579, 665 P.2d 743 (1983).

Kansas law recognizes two theories under which the corporate entity may be disregarded: (1) the alter ego theory and (2) the interest of justice theory. See, *e.g.*, *Kilpatrick Bros., Inc. v. Poynter*, 205 Kan. 787, 796-97, 473 P.2d 33 (1970) (noting that the corporate entity may be disregarded " 'when necessary to the justice of the case' " or " 'when the corporation is the mere alter ego, or business conduit of a person' "); *Service Iron Foundry, Inc. v. M. A. Bell Co.*, 2 Kan. App. 2d 662, 673, 588 P.2d 463 (1978) ("the corporate entity can be disregarded if it is used to cloak or cover fraud or illegality or to work injustice, or if necessary to achieve equity").

The alter ego doctrine imposes liability on an individual who uses a corporation merely as an instrumentality to conduct his or her own personal business. Such liability arises from fraud or injustice perpetrated not on the corporation but on third persons dealing with the corporation. Under this theory, the court disregards the corporate entity and holds the individual responsible for acts knowingly and intentionally done in the name of the corporation. *Kvassay v. Murray*, 15 Kan. App. 2d 426, 436, 808 P.2d 896 (1991). To determine whether a corporation is merely an alter ego of the individual stockholder, courts generally consider eight factors. See *State ex rel. Graeber v. Marion County Landfill, Inc.*, 276 Kan. 328, 354-55, 76 P.3d 1000 (2003) (listing factors and noting that no factor is individually controlling and one factor alone may be sufficient to support disregard of the corporate entity under the alter ego theory).

Preliminarily, petitioners assert the district court erred in failing to apply the eight-factor alter ego test. We do not agree. While the district court noted that the corporate veil may be pierced under the alter ego theory "when an individual fraudulently uses a cor-

porate entity as nothing more than a cloak for his or her activity," the court found that theory "largely inapplicable" here. This conclusion is not challenged by either party on appeal. Instead, petitioners challenge the district court's application of the "interest of justice theory" to find Hill and OT Cab individually and jointly liable for the civil penalty.

Unfortunately, there is little guidance in our case law for application of this theory. The theory was recognized but not specifically applied in *Kilpatrick Bros., Inc. v. Poynter*, 205 Kan. at 796 (citing 18 Am. Jur. 2d, Corporations §§ 14 and 15; 1 Fletcher, Cyclopedia Corporations, perm. ed. §§ 41 and 41.1). There, citing extensive evidence that Poynter had transferred funds and assets between his multiple corporations, paid personal loans from corporate accounts, and disregarded "the separate personalities" of his corporations, the court applied the alter ego theory to affirm the trial court's decision holding Poynter personally liable for the debts of his corporations. 205 Kan. at 797-98; see also *Service Iron Foundry, Inc. v. M. A. Bell Co.*, 2 Kan. App. 2d at 673-74 (generally recognizing theories for disregarding the corporate entity, but applying alter ego doctrine).

The trial court in this case relied upon *Kvassay v. Murray*, 15 Kan. App. 2d at 439, to support application of "the interest of justice theory" and find OT Cab and Hill jointly and individually liable here.

Kvassay was awarded damages against Great American Foods, Inc., on a breach of contract claim, but he appealed from the trial court's ruling denying him additional liquidated damages as lost profits. Great American and its principals, the Murrays, cross-appealed from the trial court's decision permitting Kvassay to pierce the corporate veil and collect damages from the Murrays.

Applying the alter ego theory, the panel in *Kvassay* found sufficient evidence to support the trial court's findings that the Murrays undercapitalized the corporation, failed to observe corporate formalities, commingled personal and corporate funds, failed to keep corporate records, and used the corporation as a facade for personal business. 15 Kan. App. 2d at 437-40. The *Kvassay* panel specifically upheld the trial court's determination that "the Mur-

rays used the corporation as a facade for their own interests and, in doing so, 'worked to the injustice of the plaintiff by inducing him to enter into the contract.' " 15 Kan. App. 2d at 439. Thus, the panel clearly applied the alter ego theory, under which liability can arise from "from fraud or injustice perpetrated not on the corporation but on third persons dealing with the corporation." 15 Kan. App. 2d at 436.

Great American also argued that absent proof that the corporation itself was used to commit fraud or to perpetrate a wrong, the corporate veil could not be pierced based on use of the corporate entity to promote injustice or fraud. The panel in *Kvassay* rejected this argument, citing *Kilpatrick* for the proposition that "[i]njustice alone will support a disregard of the corporate entity." 15 Kan. App. 2d at 439.

The *Kvassay* panel also rejected Great American's argument that a breach of contract is insufficient to establish the requisite injustice to allow disregard of the corporate entity, noting "[a] review of Kansas cases, however, clearly shows it is appropriate to pierce the veil to prevent injustice or to achieve equity and it does not matter what kind of action is involved." 15 Kan. App. 2d at 440 (citing *Kilpatrick*, 205 Kan. at 798, and *Service Iron*, 2 Kan. App. 2d at 673). Further, the panel held that despite the absence of evidence to establish that Kvassay relied on Great American's corporate status in entering into the contract, "the injustice that would result in this case is sufficient to support a determination to pierce the corporate veil." *Kvassay*, 15 Kan. App. 2d at 440.

B. <u>Legal Basis for Disregard of the Corporate Entity In This Case</u>

The district court relied on *Kvassay* in concluding the "mere presence of injustice is sufficient to support a disregard of the corporate entity." The court thus affirmed the AHO's finding that Hill was individually liable based upon the "injustice" that occurred when OT Cab, acting by its owner and president Ted Hill, knowingly and intentionally failed to maintain workers compensation insurance from January 1, 2005, until November 17, 2005. Further, the district court articulated that the injustice occurred "the mo-

ment Petitioners decided to not provide workers compensation insurance to their employees."

The district court's reliance on *Kvassay* is misplaced. While *Kvassay* did hold that "[i]njustice alone will support a disregard of the corporate entity," the court did not rely solely upon a perceived "injustice" to support its decision. Rather, the court based its decision upon numerous factors evidencing a disregard of the corporate entity under the alter ego theory. *Kvassay*, 15 Kan. App. 2d at 437-40. Essentially, the *Kvassay* panel simply applied the eighth factor of the alter ego test, which permits the court to consider whether the corporate entity was used "in promoting *injustice* or fraud." *State ex rel. Graeber v. Marion County Landfill, Inc.*, 276 Kan. 328, 355, 76 P.3d 1000 (2003) (quoting *Speer v. Dighton Grain, Inc.*, 229 Kan. 272, 279, 624 P.2d 952 [1981]).

Here, the district court specifically found that "the mere fact that Petitioners were in violation of Kansas law during [the period of noncompliance] is sufficient injustice in the eyes of this Court." The district court reasoned that "[t]o find otherwise would be to undermine the policy and purpose of the KWCA and establish a dangerous precedent in which employers could disregard the law without reprisal until an employee was actually harmed."

Implicit in the district court's rationale is the assumption that OT Cab would not pay the fine or would somehow avoid its liability. Yet we find no support in the record for this assumption. Neither the AHO nor the district court found that OT Cab's assets were insufficient to cover the civil penalty, nor is there any indication OT Cab would declare bankruptcy or take any other action to avoid the penalty. Moreover, even if the district court had made such findings, the Division cites no authority to indicate OT Cab's inability to pay the penalty would be a sufficient injustice, standing alone, to support disregard of the corporate entity.

Finally, we note that any "injustice" based on noncompliance with the KWCA presumably was remedied by the imposition of the civil and/or criminal penalties provided by K.S.A. 2008 Supp. 44-532. Further, the KWCA contemplates and remedies any perceived "injustice" to employees who may have been injured during the period of noncompliance. See K.S.A. 44-532a (allowing injured

workers to apply to the director for an award from the workers compensation fund in cases where the "employer has no insurance to secure the payment of compensation, as provided in subsection [b][1] of K.S.A. 44-532 . . . and such employer is financially unable to pay . . . or . . . cannot be located).

Accordingly, we find the district court erred in disregarding the corporate entity "in the interest of justice" based solely on OT Cab's violation of K.S.A. 2008 Supp. 44-532(b). Thus, we reverse the imposition of joint and individual liability against Ted Hill.

## C. Conclusion

In conclusion, we affirm the district court's determination that OT Cab's drivers were employees rather than independent contractors. We further find that K.S.A. 2008 Supp. 44-532(d) requires imposition of a civil penalty upon a finding that the employer has knowingly and intentionally failed to maintain workers compensation insurance in violation of K.S.A. 2008 Supp. 44-532(b). However, because the Division imposed a "discretionary" fine of $10,000 rather than the mandatory civil penalty required under K.S.A. 2008 Supp. 44-532(d), we remand this case to the Division for imposition of the mandatory penalty of $25,000. Finally, we find no basis in fact or law to disregard the corporate entity, and we reverse the district court's determination that Ted Hill and OT Cab are jointly and individually liable for the civil penalty. Upon remand, we direct the Division to find OT Cab solely liable for the $25,000 penalty.

Affirmed in part, reversed in part, and remanded with directions.